384 P.2d 591

HART BROS. MUSIC COMPANY, a corporation, Plaintiff and Appellant,

v.

Lile R. WOOD and All-American Credit Card Corporation, a corporation, Defendants and Respondents.

No. 9675.

Supreme Court of Utah.

Aug. 16, 1963.

---

L. Delos Daines, Salt Lake City, for appellant.

Kipp & Charlier, Telesphore Charlier, Salt Lake City, for respondents.

CROCKETT, Justice.

Defendant Lile R. Wood purchased a piano for $908.15, including tax, from the plaintiff, Hart Bros. Music Company, which has not been paid for. Those facts being established, it would seem that the plaintiff should have judgment against Wood for the piano or its value, as it asks, but which the trial court refused to grant.

But as usual, contested lawsuits are not quite that simple and there are complicating circumstances which must be considered.

In purchasing the piano, Wood used a credit card of the co-defendant, All-American Credit Card Corporation. This company had a contract with the plaintiff Hart Bros. by which the latter had agreed to sell merchandise to credit card holders and to look only to All-American Credit, and not the customers, for payment. A purchase agreement was executed, consistent with the contract mentioned above, which recited that the account would be assigned to the All-American Credit; and that payments for the piano would be made to that company. Wood claims that by reason thereof his obligation was solely to All-American Credit; and that Hart Bros. was bound to look only to All-American Credit for its money. This would seem to defeat Hart Bros.' claim against Wood.

However, as stated above, contested lawsuits are not always that simple, and there are further complicating circumstances which must be considered.

Hart Bros. counters that in purchasing the piano defendant Wood practiced a fraud and deceit in inducing it to make the purported sale on the credit card; that by reason of that deception it was entitled to and did rescind the contract in respect to this transaction; and consequently has the right to hold the defendant Wood personally responsible for the purchase. Whether that contention was established is the crux of this lawsuit.

Defendant Wood was the president and a functioning officer of the co-defendant All-American Credit Card Corporation. It had been organized and incorporated a few months previously, on August 6, 1959, for the purpose of issuing credit cards to customers who could purchase merchandise on credit from various designated retail stores. The dealer would then assign the account, less a stipulated discount, to All-American Credit, who in turn would collect the full amount of the purchase price from the customers and therein make its profit. Whereas All-American agreed to pay the dealers monthly, it allowed the customers to pay over longer periods of time as agreed upon. It is thus obvious that in the beginning period of its operations it would have more debts than income. Sales of its stock were supposed to provide capital to meet this need. The Utah Securities Commission permitted an initial issue of 125,000 shares at $1.00 per share. Although this issue was entirely subscribed for, less than a third of the proceeds had been collected. Upon application for permission for a second issue, of 175,000 shares, some difficulties had arisen and the company was unable to collect further on its stock.

From the time if its organization in August, 1959, until this transaction in December of that year, All-American Credit's finances steadily declined: that is, from about $31,000 in the beginning to less than $100. On December 30, 1959, a board of directors meeting was held at which Wood presided. The financial condition of the company was considered; the accounts due to dealers to be paid right after January 1, 1960, amounted to about $7,000; and other accounts were steadily accruing. The cash on hand was $58.93. Various ideas for raising money were discussed, but nothing of consequence was accomplished.

It was upon the above state of affairs, and with full knowledge of them, that the defendant Wood appears to have decided to buy himself a piano upon his personal credit card, which, incidentally, would expire the next day, December 31, 1959. On that day he went to the plaintiff Hart Bros.' store and told Mr. Hart that he wanted to purchase a piano on his All-American Credit Card. In the conversation, Mr. Hart asked him " * * * if the credit was good for that much * * *." Mr. Wood said it was; called the company office; got the treasurer, a Mr. Donaldson, on the phone and handed the phone to Mr. Hart, who asked him " * * * if the credit was good for the amount of $900."

He [Donaldson] said, "Yes; good for $10,000. Let him have what he wants; sign on the card * * *." Mr. Hart questioned Donaldson about certain other bills. Donaldson further said, "include all in one bill, send it down there, and we will send your check by return mail."

Even though we survey the evidence in the light most favorable to the trial court's finding, the position of Mr. Wood on this critical aspect of the case is no better than shown by his own statements. The only fair import of the representation by him, and by Donaldson, which was adopted by Wood in getting him on the phone for the purpose of making a representation with respect to the matter, was this: there is plenty of money to pay for the piano. These further facts seem quite inescapable: that Wood knew that this representation was being so understood by Hart; and that it was being relied upon by the latter as true; whereas, Wood knew it to be false.[1]

Under such circumstances Wood should not be allowed to compound his deception of Hart and avoid being held to account for it by nice distinctions of language he claims to have used; nor by what appear to be convenient lapses of memory; nor yet, by the evasiveness apparen. in his

[1]. For elements of fraud see Stuck v. Delta Land & Water Co., 63 Utah 495, 227 P. 791; and Pace v. Parrish, 122 Utah 141, 247 P.2d 273.

answers in being uncertain as to: the date the directors' meeting was held; what it was held for; whether finances were discussed; what they were; and what representations were made to Hart concerning them. It is the purpose of the law, and of the court in administering it, to do justice and to look through form to substance when necessary to accomplish that objective. In doing so here, the conclusion seems unavoidable that Wood designedly perpetrated deception upon Hart in buying this piano; knowing full well that it would not be paid for.

Upon the basis of this record as we view it, the evidence so clearly preponderates against the judgment in favor of Wood that it must be reversed,[2] and judgment entered against him for the piano, or for its value; and if the piano is surrendered, for either a reasonable rental, or depreciation, whichever is the less, for the time since the purported purchase. No appeal having been taken from the judgment against co-defendant All American Credit Card Corporation, it stands.

Costs to plaintiff (appellant) as against defendant Wood.

HENRIOD, C. J., and McDONOUGH, CALLISTER and WADE, JJ., concur.

2. As to when reversal is ordered, See statement in Nokes v. Continental Mining

& Milling Co., 6 Utah 2d 177, 308 P.2d 954.