Nanette DIXON, Val Humpherys, and Carrie Humpherys, Plaintiffs and Appellants,

v.

William STODDARD and Darlene Stoddard, his wife, Defendants and Respondents.

No. 16876.

Supreme Court of Utah.

March 16, 1981.

R. C. Skeen, Salt Lake City, for plaintiffs and appellants.

Dale M. Dorius, Brigham City, for defendants and respondents.

HARDING, District Judge:

This is an action by the plaintiffs as heirs of Glen S. Humpherys to enforce payment of a balance of $12,693.81, claimed to be owed on a promissory note for $25,190.74, signed by the defendants, William Stoddard and Darlene Stoddard, and dated December 30, 1967. The note was given pursuant to a written contract between Glen S. Humpherys and the defendants, wherein Humpherys sold to defendants certain merchandise in his drug store in Brigham City, Utah, including the prescription inventory and the prescription files. There was to be an inventory taken of the merchandise by The Rocky Mountain Wholesale Inventory Crew and the value determined to fix the sales price. Part of the price was to be paid immediately ($6,000 was actually paid) and the remainder in twelve equal monthly installments over a period of one year, the first monthly installment to be paid February 1, 1968. There was to be interest at six percent per annum on late payments. The defendants took delivery of the merchandise at the Humpherys' store January 2, 1968, and removed the merchandise to their own store in the same city. Defendants began to pay the note by paying $2,400 in February, 1968, then $2,100 in March, 1968, and continued thereafter with monthly or periodic payments of varying amounts until the fall of 1975, when they declined to make further payments. The defendants had

paid a total of $18,694.66, of which $6,197.73 was interest and $12,496.93, principal, leaving a balance owing on the note of $12,693.81.

Glen S. Humpherys died May 7, 1975, and through probate proceedings, his heirs, the plaintiffs herein, succeeded to his interest in the note. The defendants made payments on the note for approximately six months after the death of Mr. Humpherys.

After plaintiffs filed suit, the defendants answered, claiming that they had signed the note when the amount of the note was blank, and they did not know who filled in the amount. They also claimed that the note had been fraudulently altered by Humpherys; that they had overpaid the note; that no inventory of the merchandise had been taken; that they had not received a copy of any inventory; that any such inventory was to be reconciled by them, and that no reconciliation had occurred; that there was a substantial amount of the merchandise received from Humpherys that was unsaleable for which they were entitled to credit; and that some of the merchandise was to be paid for when they sold it.

Immediately prior to the trial by a jury, the court and counsel had a conference and discussed the law with respect to the so-called "dead man's statute" (Section 78–24–2, U.C.A.1953), the plaintiffs insisting on its protection. The judge told counsel how he would handle the situation so as to expedite the trial.

At the trial, the plaintiffs presented a witness who testified concerning the identity of the note, the amount owing thereon, and the ownership thereof. Counsel then offered the note and certain other exhibits in evidence. Defendants' counsel objected. The court observed that the defendants had admitted in their answer that they had signed the note in question, but requested plaintiffs' counsel to call defendant William Stoddard as an adverse witness to identify the signatures to get the matter before the jury. Counsel acceded to the court's request and called William Stoddard as an adverse witness. Counsel confined his examination of Stoddard to the identification of the signatures on the note. Stoddard stated the signatures were his and Darlene Stoddard's. Upon immediate cross-examination, defendants' counsel asked about the details surrounding the signing and brought out the answer that the amount of the note was blank when the signatures were affixed. This was objected to by plaintiffs' counsel on the basis of the provisions of Sec. 78–24–2 (the dead man's statute), but the statement was allowed to remain by the court. Throughout the remainder of the trial, the court consistently sustained objections by plaintiffs' counsel when defendants' counsel attempted to elicit conversations between Humpherys and Stoddard, but permitted some answers on matters equally within the knowledge of the witness and the decedent Humpherys. At the close of the trial, plaintiffs moved for a directed verdict. The court reserved a ruling, and later denied it.

The jury returned a special verdict that the note had been fraudulently altered by Humpherys. The court entered a judgment thereon against the plaintiffs. The plaintiffs filed a notice of appeal. While the appeal was pending, the plaintiffs found the adding machine tapes for the inventory and certain other documents pertaining to the inventory. They moved for a new trial on the basis of newly discovered evidence, but their motion was denied on the grounds that the newly discovered evidence could have been discovered in time for the trial by the exercise of due diligence, and that the new evidence would not change the result of the trial.

It is clear from the transcript of the trial proceedings that the plaintiffs did not intend to waive the protection afforded to them by the provisions of Sec. 78–24–2, U.C.A.1953 (dead man's statute), and that the court did not consider they had done so. Excepting, however, that the court did not exclude testimony of Stoddard on all of the transactions equally within the knowledge of Humpherys and the Stoddards.

We hold that the plaintiffs did not waive the protection of the so-called "dead man's statute" with the court's express re-

quest to call William Stoddard to identify the signatures on the promissory note to get such evidence before the jury.[1] Actually, no testimony was required for this purpose. The judge would know the contents of the pleadings and should, himself, instruct the jury that the signatures on the note were the defendants'.

Defendants' counsel argues that the Stoddard testimony that the note was signed in blank was harmless, since the judge had authority to instruct the jury that the defendants had admitted in their answer that their signatures on the note were affixed when the amount thereof was blank. This statement in the answer was an admission as to the signing, but was only an assertion as to the remainder. An admission is a statement of a party inconsistent with his claim in an action and amounting therefore to proof against him. 20 Am. Jur.2d, Sec. 543, Note 3. An admission is always against and not in favor of the party making the statement. In the absence of evidence that the note was signed in blank, an instruction to that effect would be error. The judge is not required, nor is he permitted, to tell the jury everything stated or claimed in the pleadings. In stating the contentions of the parties, his instructions are limited to the factual issues upon which admissions or stipulations have been made or sufficient proof developed during the trial to warrant submission to the jury.

Stoddards removed the purchased merchandise from Humpherys' store to their own store on or about January 2, 1968. If an inventory had not been taken at that time, such removal would have made an inventory quite impracticable. Defendants acted as if the inventory had been taken and valued, and are not now in a position to deny it.[2]

Stoddards claim that the amount stated in the note was fraudulently filled in. If no amount was stated in the note when it was signed, presumably Humpherys was authorized to complete it for the amount of the inventory price when that amount was ascertained. Only if an amount greater than the inventory called for was inserted, would there be any fraud. Stoddards knew that the contract provided for an uncertain but determinable amount, and that payments would be based thereon. The first payment made was for $6,000. The balance was to be paid in twelve equal monthly payments over one year, with interest at the rate of six percent per annum on delinquent payments only. Stoddards paid $2,400 in February, 1968. If this were one-twelfth of the balance of the purchase price, then such balance would be $28,800, which is more than the principal of the note. The next payment in March, 1968, was for $2,100. If this were one-twelfth of the correct amount, then the amount would be $25,200, which is very close to the actual amount stated of $25,190.74. Another payment for $2,100 was made in April, 1968. Stoddards continued to make payments in reduced amounts to the point of delinquency, and interest became due and payable. One of their checks to Humpherys, dated September 1, 1968, indicates it is for interest, proving the delinquency and Stoddards' knowledge of it. At least, by the time Stoddards knew of their delinquency and their obligation to pay interest, they would have been aware of a close approximation of the amount of the note. They knew by reason of the requirement of one-twelfth thereof each month as a payment, and the interest they paid for letting the monthly payment become delinquent. They continued to make payments on the note for seven more years, ascertaining from Humpherys the amount paid each year for interest, and showing it as a deduction on their income tax returns. It is a simple matter to determine the approximate principal of an obligation if the amount of the interest and the interest rate are known—just divide the amount of the yearly interest by the rate of interest.

1. *Burk v. Peter*, 115 Utah 58, 202 P.2d 543 (1949), and *O'Gara v. Findlay*, 6 Utah 2d 102, 306 P.2d 1073 (1957).

2. 28 Am.Jur.2d, Estoppel, Sec. 59, page 677; *Lawson v. Woodmen of the World*, 88 Utah 267, 53 P.2d 432 (1936).

During the period of more than seven years, with Stoddards knowing, or reasonably charged with knowing, the amount of the note, the record shows no oral or written complaint having been made to Humpherys while he was alive.

■ The course of dealing between the parties, and the performance of the defendants for more than seven years without any objection, until after Humpherys' death, raises an estoppel against the defendants and prevents them from asserting any defense, if any they had, when the only one who can contradict their statements is dead.

■ Plaintiffs moved for a new trial on the ground of newly discovered evidence. In considering this motion, and for purposes of the motion only, we accept the statements in the supporting affidavits to be true, unless contradicted or manifestly untrue. In this case, the statements in the affidavits were uncontroverted, and would have proved the taking of the inventory on or about December 31, 1967, and its value, and would have supported the exact amount of the principal stated in the promissory note. In view of the court's concern about the absence of proof of an inventory, this would have been relevant evidence, and might have changed the result of the trial. The motion should have been granted.

It is the purpose of the law, and of the court in administering it, to do justice and to look through form to substance when necessary to accomplish that purpose.[3]

We hold that there was reversible error in receiving incompetent evidence, and in failing to grant a new trial for newly discovered evidence.

Reversed and remanded for a new trial.

HALL and CROCKETT,* JJ., concur.

STEWART, Justice (concurring):

I concur in the reversal of the judgment for the reason that the motion for a new trial should have been granted in this case on the ground of newly-discovered evidence.

It is clear that the evidence of an inventory bore directly upon a central issue of the case and that had this evidence been available at trial, the result might well have been different.

I take exception, however, to the majority's stating that the "course of dealing between the parties, and the performance of the defendants for more than seven years without any objection, until after Humpherys' death, raises an estoppel against the defendants and prevents them from asserting any defense, if any they had, when the only one who can contradict their statements is dead." This so-called "finding" is wholly gratuitous and effectively predetermines the issue for which the case is to be remanded for retrial. What is worse, the issue of estoppel was not raised in the court below and was not argued before this Court. It is inappropriate for this Court to reach out and assume the task of deciding an issue contrary to one party's interest when the issue has not been litigated either in the trial court or in this Court.

Furthermore, it is inappropriate for this Court to hold that "the plaintiff did not waive the protection of the so-called deadman's statute with the court's express request to call William Stoddard to identify the signatures on the promissory note to get such evidence before the jury." It is true that the trial court requested the plaintiffs to call William Stoddard to identify the signatures on the promissory note, and it was no doubt unnecessary for Stoddard to testify, as the majority points out. But it is equally clear that counsel was not required to comply with the suggestion of the trial court and could simply have avoided the issue by pointing to the judicial admission made in the pleadings with respect to the signature of the note and thereby have avoided placing Stoddard on the stand altogether. In my view, it is the right and the duty of counsel to pursue whatever strategy he or she may think appropriate in a given case. They are not

---

3. *Hart Bros. Music Company v. Wood*, 14 Utah 2d 366, 384 P.2d 591 (1963).

* CROCKETT, J., concurred in this opinion prior to retirement.

required to relinquish the control of their case in a matter such as this to a request by the trial judge, and compliance with that request does not relieve trial counsel of the consequences of complying therewith.

I have no doubt that the administration of justice is likely to be greatly enhanced when trial judges act not solely as passive arbiters but, when occasion demands, become involved to assure the just outcome of a cause. But in the end, our system of justice is basically adversarial, and counsel must ultimately take the responsibility for the trial strategy.

MAUGHAN,· C. J., does not participate herein.

HARDING, Retired District Judge, sat.

WILKINS, J., heard the arguments but resigned before the opinion was filed.