Argued and submitted February 24, affirmed April 20, reconsideration denied July 22, petition for review denied August 30, 1988 (306 Or 527)

HONEYMAN,
*Respondent,*

*v.*

CLOSTERMANN et al,
*Appellants.*

(A8305-03267; CA A38251)

753 P2d 1384

Francis E. Harrington, Portland, argued the cause and filed the briefs for appellants.

Mildred J. Carmack, Portland, argued the cause for respondent. With her on the brief were Thomas V. Dulcich and Schwabe, Williamson & Wyatt, Portland.

Before Warden, Presiding Judge, and Rossman and Graber, Judges.

GRABER, J.

## GRABER, J.

Plaintiff brought this action for specific performance of an earnest money agreement involving the sale of an undeveloped lot in Portland. The trial court granted specific performance on modified terms and dismissed defendants'[1] counterclaims with prejudice. Defendants appeal, and we affirm.

Plaintiff, a building contractor, became interested in buying a lot owned by defendants. Defendants were represented in the transaction by Spassov, a real estate agent. The listing for the lot stated that it contained "approximately 5,000 square feet." Zoning regulations required a variance in order to build on a lot smaller than 7,000 square feet. If the lot were between 5,000 and 7,000 square feet an "administrative variance" could be obtained; but, if the lot were less than 5,000 square feet, it would require a "major variance," including notice to the neighbors and a hearing.

On March 10, 1983, plaintiff made the offer that is the subject of the current dispute. Defendants accepted the offer and signed an earnest money agreement. Handwritten in the agreement was this "special condition":

> "Sale subject to receiving approval by city, state, and county concerning buildability of said lot. This transaction to close within 5 working days of satisfaction of contingency."

Further, defendants were to "pay all cost [*sic*] concerning approval of buildability of lot," and the $1,000 earnest money was to be evidenced by a "promissory note payable on satisfaction of contingency." There also was a "time is of the essence" clause, which provided that the transaction was to close "on or before April 10." Separate paragraphs stated that defendants were to pay insurance and taxes on the property through April 10 and that they would deliver possession on April 10.

When the earnest money agreement was prepared, the parties did not know whether a "major" or "minor" variance was required, because they did not know the exact size of the lot. Although the agreement required defendants to pay the costs of obtaining "approval of buildability," they did not

---

[1] In this opinion, "defendants" refers to the Clostermanns.

assist plaintiff,[2] who, on March 28, employed a surveyor to measure the lot. Sometime between March 28 and April 1, the surveyor informed plaintiff that the lot contained only 4,870 square feet and that, therefore, the more extensive major variance procedure applied. On April 1, Quinlan, plaintiff's agent, obtained an application for a major variance, and plaintiff hired an architect to prepare a site plan, which the application required.

At some time after April 10, Spassov told Quinlan that, because April 10 had passed, the transaction would not be consummated. Quinlan then sent Spassov an addendum, which would have extended the closing date to May 20, 1983. Plaintiff signed the addendum on April 24, 1983. Two days later, Maxine Clostermann wrote the word "refused" on the proposed addendum and signed it on behalf of both defendants. Quinlan and plaintiff testified that they submitted the addendum to defendants because they were not certain that Spassov, defendant's agent, had kept defendants informed about the transaction.

On April 23, Spassov had offered to buy the property from defendants. He told plaintiff that "a third party" had made an offer for the lot and was going to build a house on it. Plaintiff testified that Spassov refused to forward plaintiff's variance application to defendants for their signatures, which were required. By May 10, 1983, plaintiff's variance application was complete except for defendants' signatures, and plaintiff and Quinlan took the application to the City Planning Commission office for a completeness review. They learned that Spassov had already filed an application for a variance on the same property. He had entered into an earnest money agreement with defendants on May 1 and had arranged for an architect to pursue the application for a variance on his behalf. A variance was granted in July 1983.

Before addressing the merits, we must resolve certain procedural issues. This case has a checkered history. Although the original complaint named the Clostermanns as the only defendants, plaintiff filed an amended complaint on March

---

[2] Defendants argue that their sole obligation with regard to paying the costs concerning approval of buildability was to pay the variance fee. We need not decide whether their interpretation is correct.

16, 1984, adding Spassov as a defendant. A default order was entered against Spassov on May 9, 1984. On November 27, 1985, the trial court entered a judgment for plaintiff but against only the Clostermanns. The Clostermanns filed a notice of appeal on December 20, 1985. Plaintiff then asked us either to dismiss the appeal so a proper judgment (including Spassov) could be entered or to allow the trial court leave to enter a corrected judgment.

On March 3, 1986, we gave the trial court leave to enter a corrected judgment pursuant to ORS 19.033(4). The order provided in part that defendants "shall have 14 days from the date of entry [of the corrected judgment] to file an amended notice of appeal." Thereafter we granted extensions of time for defendants to comply with the order; the final "order granting extension of time" gave them 14 days from June 13, 1986, to file their amended notice of appeal. That is, defendants had until June 27, 1986, to appeal from a corrected judgment.

The corrected judgment was entered on May 29, 1986, disposing of all claims between plaintiff and all defendants, including Spassov. Defendants and Spassov filed a notice of appeal on July 1, 1986.[3] We entered an order dismissing Spassov's appeal for lack of jurisdiction.[4] Questions remain, however, as to the effect of defendants' filing their amended notice of appeal (1) more than 30 days after entry of the corrected judgment in the trial court and (2) beyond the time allowed by our order.

We conclude, first, that failure to file a notice of appeal within 30 days after entry of the corrected judgment

---

[3] In their opening and reply briefs, defendants state that they filed their second notice of appeal on June 27, 1986. That statement is plainly wrong. The envelope in which the notice of appeal was sent to us bears a postmark of June 30, 1986, and the text recites that service copies were mailed on June 30. June 30 was a Monday, so a June 30 filing would have been within the statutory 30-day period for filing a notice of appeal. ORS 19.026. The date of filing would be the date of mailing *if* defendants had mailed their notice by certified or registered mail. ORS 19.028. Because defendants did not do so, the date of filing is July 1, when we received the amended notice of appeal. *See* ORAP 1.35(1).

[4] The first judgment including Spassov was entered on May 29, 1986. We lack jurisdiction over Spassov's appeal, because he filed his notice of appeal more than 30 days after judgment was entered against him. ORS 19.026; ORS 19.028; *Southwest Forest Industries v. Anders,* 299 Or 205, 213, 701 P2d 432 (1985).

does not deprive us of jurisdiction. We obtained jurisdiction when defendants timely appealed from the first judgment. Our remand to the trial court with leave to enter a corrected judgment pursuant to ORS 19.033(4) did not affect our jurisdiction. *See Murray Well-Drilling v. Deisch,* 75 Or App 1, 9, 704 P2d 1159 (1985), *rev den* 300 Or 546 (1986).

Although we have jurisdiction of the appeal, defendants filed their second notice several days after the June 27, 1986, deadline set by our order. We have discretion to dismiss the appeal for failure to comply with that order, ORS 19.033(3), but decline to do so. We turn to the merits.[5]

Defendants assign two errors related to the action for specific performance. First, they argue that the agreement was not capable of specific performance, because it had expired by its terms on April 10. Second, defendants challenge the form of the judgment, which called for a contract of sale rather than a deed. We review *de novo.* ORS 19.125(3).

The trial court first held that the earnest money agreement was ambiguous:

"10.   The earnest money agreement between plaintiff and defendants contained an ambiguity in that it identified an apparent closing date of April 10, 1983, and another closing date of five days after buildability was achieved."

We agree that it is ambiguous. The April 10 closing date in the "time is of the essence" clause conflicts directly with the "special condition" that the sale "close within 5 working days of satisfaction of [the buildability] contingency" and with the provision that the $1,000 in earnest money be "payable on satisfaction of contingency."

The trial court then resolved the ambiguity as follows:

"Based on the intent of the parties when the earnest money agreement was entered into that plaintiff would require a reasonable amount of time to obtain the variance, the court finds that the parties intended April 10, 1983 to be a target date only, and not an outside closing date. The parties

---

[5] The assignments of error fail to comply with ORAP 7.19; we address them nonetheless.

intended and agreed that closing was not to occur until a variance had been obtained to make the property buildable."

Because the agreement was ambiguous, extrinsic evidence, including evidence of the intent of the parties when they entered the agreement, can be considered in resolving the ambiguity. *Evenson Masonry, Inc. v. Eldred,* 273 Or 770, 772, 543 P2d 663 (1975); *see also* ORS 42.230 and ORS 42.240. Quinlan testified that the April 10 closing date was used for two reasons. First, after doing some preliminary checking, he thought that only a minor variance would be required. Second, he believed that some date had to be specified as a closing date so that the contract would not be "open ended." Quinlan also testified that the buyer was willing to close on April 10 *if the buildability contingency was satisfied at that time.*

■    Quinlan's testimony is consistent with the words of the contract and with the circumstances under which it was made. ORS 42.220. The agreement was signed on March 10. Neither plaintiff nor defendants knew then whether a major or minor variance would be required, yet all parties involved were aware that a major variance might be needed. A minor variance probably could have been obtained in the 30 days between March 10 and April 10, but a major variance most likely could not. Thus, the most reasonable conclusion regarding the parties' intent as to the closing date is that of the trial court: April 10 was a target, with plaintiff to make a good faith effort to satisfy the buildability contingency by then; but, in any event, the transaction would close within five working days after the granting of the variance. If plaintiff could not obtain a variance or failed to make a good faith effort between March 10 and April 10, then the condition precedent to defendant's performance would not be met.

Defendants point to the proposed addendum from plaintiff, requesting an extension of the closing date to May 20, 1983, as evidence that the parties' intent was to make April 10 an absolute, final date. Plaintiff and Quinlan testified, however, that the reason why they submitted the addendum was their concern that Spassov was not keeping defendants informed about the transaction. Although the proposed addendum is evidence tending in defendants' favor, we conclude that plaintiff's construction of the ambiguity in the con-

tract is more consistent with the record as a whole and is more strongly supported by the evidence.

■ . Finally, defendants argue that there was no agreement to enforce, because there was no consideration or because the contract is "unilateral." This argument lacks merit. The parties' mutual promises were adequate consideration for the bilateral agreement. Neither was the buildability requirement a condition precedent to contract *formation,* as defendants suggest, but only a condition precedent to *performance.*

■ We conclude that the agreement is sufficiently specific to be enforced and that it has the meaning given it by the trial court. We also find, as did the trial court, that plaintiff made a reasonable, good faith effort to satisfy the buildability contingency before April 10. Therefore, plaintiff is entitled to specific performance of the earnest money agreement. *See Pittman v. Thompson,* 45 Or App 627, 632, 608 P2d 1223 (1980).

■ In their second assignment of error, defendants contend that the trial court erred in fashioning a remedy. The order requires plaintiff to pay $1,000 as earnest money and $6,500 at closing, and then to pay $14,500 over a period of three years upon a contract of sale. Defendants assert that the earnest money agreement contemplated a deed at closing, rather than a land sale contract. However, the order is an appropriate equitable means to enforce the earnest money agreement and, indeed, protects defendants. We affirm the trial court's judgment in its entirety.

In their second amended answer, defendants counterclaimed for slander of their title to the property.[6] The trial judge dismissed the counterclaim for failure to state a claim. Defendants' final assignment of error challenges that ruling.

■ Because the claim was dismissed for failure to state a claim, we assume the truth of all of the pleaded allegations. *Brennen v. City of Eugene,* 285 Or 401, 405, 591 P2d 719 (1979). The elements of a slander of title claim are: "(1) The

---

[6] In the trial court, defendants supported their counterclaim with two separate theories: intentional interference with a business relationship and slander of title. On appeal, they rely only on the latter.

uttering and publication of the slanderous words by defendant; (2) the falsity of the words; (3) malice; and (4) special damages." *Shenefield v. Axtell,* 274 Or 279, 282, 545 P2d 876 (1976). The only uttering or publication alleged was plaintiff's action for specific performance. All of plaintiff's statements "related to the subject of the litigation." Accordingly, all of them were privileged. *See Chard v. Galton,* 277 Or 109, 114, 559 P2d 1280 (1977); *Moore v. Slater,* 215 Or 417, 419, 335 P2d 843 (1959). Dismissal was proper.

Affirmed.