PROPERTY ASSISTANCE CORPORA-
TION, a Utah corporation, Plaintiff
and Respondent,

v.

Douglas C. ROBERTS and Betty J.
Roberts, Defendants and
Appellants.

No. 870489–CA.

Court of Appeals of Utah.

Jan. 31, 1989.

M. David Eckersley, Salt Lake City, for defendants-appellants.

Ellen M. Maycock, Salt Lake City, for plaintiff-respondent.

Before DAVIDSON, BENCH and JACKSON, JJ.

BENCH, Judge:

Defendants seek reversal of a decree of specific performance for the sale of real property. On appeal, defendants claim error in the trial court's finding that the contract at issue was not an option contract. We affirm.

Plaintiff Property Assistance Corporation (Property Assistance) is a Utah corporation in the business of investing in distressed real estate. In January 1986, William Oelerich, president and sole employee of Property Assistance, learned that the Sandy, Utah, home of defendants Douglas C. Roberts and Betty J. Roberts was to be sold at a trustee's sale. On behalf of Property Assistance, Oelerich approached the defendants and offered to save their home from the trustee's sale. The agreement

that was ultimately signed on February 2, 1986, is the subject of this dispute.

The agreement form, which had been furnished by Oelerich, provided that: 1) Property Assistance would assume responsibility for two outstanding obligations secured by trust deeds on defendants' home; 2) Property Assistance would market the home and attempt to sell it at a fair price; 3) Property Assistance would pay defendants one-quarter of the net proceeds of the sale of the house; 4) defendants would continue to occupy the house and pay rent to Property Assistance until the house was sold; 5) Property Assistance would pay defendants $2,000 in consideration; and 6) settlement would occur on February 4, 1986.

The agreement was executed and the $2,000 consideration paid just three days before the scheduled trustee's sale. Oelerich then deposited $40,000 with the holder of the trust deed in order to postpone the trustee's sale. He also arranged to assume the obligation secured by another trust deed.

On February 7, the parties signed a document extending the date of settlement to February 26. On February 13, Property Assistance accepted an offer to purchase the house for $82,500. Property Assistance and the defendants agreed that it was desirable to avoid two closings on the property.

On February 21, Property Assistance paid off the obligation in default in the amount of $40,069.87.[1] Oelerich met with the defendants on February 26, again seeking to extend the settlement date. Douglas Roberts refused to sign the extension, stating that he wanted to increase his share of the net proceeds of the sale from one-quarter to one-third. Oelerich accepted a $500 check from the defendants for February rent and told them he would discuss their proposal with counsel. No further rent payments were made and defendants refused to perform under the agreement.

Property Assistance's original complaint sought specific performance of an "option agreement" or, in the alternative, damages. Defendants moved to dismiss the complaint under Utah R.Civ.P. 12(b) on the grounds that Property Assistance had failed to plead all the elements of an option contract. Although the court denied defendants' motion, the parties subsequently stipulated to an amended complaint which omitted all reference to an "option." Cross-motions for summary judgment were denied. In a trial to the court on June 16, 1987, Oelerich testified and was cross-examined. Defendants did not present evidence. The court then entered a decree of specific performance, finding that the agreement was not an option contract, but merely a contract which was "clear and enforceable."

On appeal, defendants dispute the trial court's finding that the original agreement between the parties was not a "true" option contract, but the "equivalent of an earnest money receipt and offer to purchase." They argue that the evidence suggests the agreement was a typical option contract which expired by its terms. Defendants claim that the trial court impermissibly rewrote an unambiguous agreement to incorporate terms which were absent from the contract.

The threshold question of whether or not a contract is ambiguous is a question of law for the court. *Faulkner v. Farnsworth,* 665 P.2d 1292, 1293 (Utah 1983); *Wilburn v. Interstate Elec.,* 748 P.2d 582, 585 (Utah App.1988), *petition for cert. granted* 765 P.2d 1277 (Utah 1989). Language may be ambiguous if "the words used to express the meaning and intention of the parties are insufficient in a sense that the contract may be understood to reach two or more plausible meanings." *Central Sec. Mut. Ins. Co. v. DePinto,* 235 Kan. 331, 681 P.2d 15, 17 (1984) (quoting *Western Casualty & Sur. Co. v. Budig,* 213 Kan. 517, 519, 516 P.2d 939, 941 (1973)). Once the trial court makes the determination that a contract is ambiguous, "because of the uncertain meaning of

---

**1.** In addition, Property Assistance later made payment on the other obligation in the amount of $368.90.

terms, missing terms, or other facial deficiencies, parol evidence is admissible to explain the parties' intent." *Faulkner,* 665 P.2d at 1293. *See also Honeyman v. Clostermann,* 90 Or.App. 615, 753 P.2d 1384, 1387 (1988) (involving specific performance of earnest money agreement).

■ Since the trial court heard the parol evidence of William Oelerich regarding the parties' intentions, the court necessarily made the initial determination that the agreement was ambiguous. We review that determination under a correctness standard, *Kimball v. Campbell,* 699 P.2d 714, 716 (Utah 1985), and conclude as a matter of law that the agreement was ambiguous. The use of a preprinted form with "option" language was confusing and created two plausible meanings, i.e., an option to sell or a contract to sell.

■ After receiving that parol evidence and apparently resolving the ambiguity, the trial court concluded that the agreement was "clear and enforceable." When a contract is determined to be ambiguous and the trial court resorts to extrinsic evidence respecting the intention of the parties, our review is strictly limited. *Wilburn,* 748 P.2d at 585. The findings and judgment based on extrinsic evidence will not be disturbed unless "clearly erroneous." Utah R.Civ.P. 52(a). *See also Porter v. Groover,* 734 P.2d 464, 465 n. 1 (Utah 1987).

After reviewing the record, we are unable to say that the trial court's findings with respect to the parties' intentions are clearly erroneous. The record supports the trial court's view that this was an enforceable contract rather than an expired option contract. The mere fact that Oelerich used a form with "option" language in it to memorialize the agreement does not establish the existence of an option contract. "It is the purpose of the law, and of the court in administering it, to do justice and to look through form to substance when necessary to accomplish that purpose." *Dixon v. Stoddard,* 627 P.2d 83, 87 (Utah 1981).

■ An option contract is "a promise which meets the requirements for the formation of a contract and limits the promisor's power to revoke an offer." Restatement (Second) of Contracts § 25 (1981). Two elements exist in such a contract: (1) an offer to sell, which does not become a contract until accepted; and (2) a contract to leave the offer open for a specified time. *Bonde v. Weber,* 6 Ill.2d 365, 128 N.E.2d 883, 888 (1955). *See generally* 91 C.J.S. *Vendor & Purchaser* § 4 (1955). Thus, by its terms, an option contract for real property requires one offer and acceptance of the exclusive right to purchase the property and another offer and acceptance for the actual transfer of the property. The option is different from all other contracts in that

> the option Holder has the legal power to consummate a second contract for the contemplated exchange of equivalents and at the same time the legal privilege of not exercising it. The option giver, on the other hand, has the correlative liability to become bound to execute that exchange, and at the same time a disability to avoid it.

1A Corbin on Contracts § 259, at 464 (1963).

■ Because Oelerich provided a form "option" agreement and attempted to adopt it to the transaction, the resulting document contains substantial typewritten and handwritten provisions, some incongruous with the printed provisions. In interpreting the meaning of the agreement, such "separately negotiated or added terms are given greater weight than standardized terms or other terms not separately negotiated." Restatement (Second) of Contracts § 203(d). An examination of those provisions suggests that defendants had agreed to avoid foreclosure not with an option to sell, but with a sale of their property.

The agreement integrates all the essential negotiations between the "buyer" and the "seller." No "second contract" for the purchase of the property was necessary. The property to be sold was specifically and accurately described. Oelerich made an offer to purchase and remitted $2,000 in consideration. The purchase price, al-

though unclear, was determined by the court to be "$40,069.87, plus the balance on the first trust deed to First Federal Savings & Loan, plus $2,000 previously paid to the Roberts, plus prejudgment interest...." "[T]he general rule is that when the price, although not definitely stated in the contract, is to be determined by the offer of a third person or by the amount which third persons are willing to pay, the contract is sufficiently definite with respect to price as to be specifically enforceable in equity." 71 Am.Jur.2d *Specific Performance* § 39 (1973). "Settlement" was to occur "when the Seller shall deliver a warranty deed for the said premises." Although the date for settlement (within two days of execution) was inherently unrealistic, it was, nonetheless, stated in the document.[2] A time and place for "settlement" was also described. Provision had even been made in the contract for the defendants to continue to reside in the house and pay rent until Property Assistance sold the property to a third party and divided the net proceeds.

All that was needed was for defendants to convey the property to Property Assistance. Defendants clearly closed Oelerich's open offer by signing the document and by accepting Oelerich's check. The payment of rent as well as the behavior of the parties evidences something more than a mere "option" to buy the property. "Words and other conduct are interpreted in the light of all the circumstances, and if the principal purpose of the parties is ascertainable it is given great weight." Restatement (Second) of Contracts § 202(1). The language of the agreement, when viewed in conjunction with the parties' intent to save the property from foreclosure, supports the trial court's conclusion that this was not a typical contractual arrangement for an option.

■ Thus, the trial court properly "examine[d] the contract and the circumstances pertaining to its execution and formation" and decided that there were "equitable grounds" to grant specific perform-

ance. *Otteson v. Malone*, 584 P.2d 878, 879–80 (Utah 1978). "Specific performance is a remedy of equity which is addressed to the sense of justice and good conscience of the court, and accordingly, considerable latitude of discretion is allowed in [the trial court's] determination as to whether it shall be granted and what judgment should be entered...." *Morris v. Sykes*, 624 P.2d 681, 684 (Utah 1981). *See also LHIW, Inc. v. DeLorean*, 753 P.2d 961 (Utah 1988). Specific performance as a remedy may not be upset on appeal in the absence of an abuse of discretion. *Morris*, 624 P.2d at 684. In this case, the record incontrovertibly establishes that defendants failed to deliver a warranty deed to the property. Since they failed to perform under the contract, the trial court could reasonably find in its discretion that equity required specific performance of the agreement.

The judgment of the trial court is affirmed.

DAVIDSON and JACKSON, JJ., concur.

---

**2.** Confronted with unrealistic timing provisions in an option contract, the Utah Supreme Court in *State ex rel Public Welfare Comm'n v. Bon-*

*nett,* 114 Utah 546, 201 P.2d 939, 945–46 (1949), construed the terms of the option so as to give effect to the parties' intent.