2005 UT App 497

**U.S. GENERAL, INC., a Utah corporation, Plaintiff and Appellant,**

v.

**Kenneth JENSON and Julie Jenson, Defendants and Appellees.**

No. 20040321–CA.

Court of Appeals of Utah.

Nov. 17, 2005.

Brent R. Armstrong and Steven R. Paul, Armstrong Law Offices PC, Salt Lake City, for Appellant.

Randall L. Skeen, Cook Skeen & Robinson, LLC, Salt Lake City, for Appellees.

Before Judges GREENWOOD, ORME, and THORNE, Jr.

## OPINION

GREENWOOD, Judge:

¶ 1 Plaintiff U.S. General, Inc. appeals the trial court's denial of its motion for summary judgment and grant of Defendants Kenneth and Julie Jenson's motion for summary judgment regarding the purchase of a residential real estate lot (Lot 69). Plaintiff argues that

the trial court erred in concluding that (1) the residential real estate contract for the purchase of Lot 69 (the Contract) was not an option contract; (2) the forfeiture provision of the Contract limited Plaintiff's recovery to money already paid or retained under the Contract; and (3) the Contract required Plaintiff to elect its sole remedy of retaining the earnest money deposit (the Deposit). We reverse and remand for proceedings consistent with this opinion.

## BACKGROUND [1]

¶2 Defendants contracted with Plaintiff, a real estate developer, on December 30, 1999, regarding their purchase of Lot 69 for $107,900.[2] Under paragraph B of the Contract, Defendants agreed to pay "a non-refundable earnest money deposit ... of ... $1,250.00[ ] together with a non-refundable credit for HVAC work on lot 98 of ... $18,-310.00[ ] for a total non-refundable deposit of ... $19,560.00[ ]." Defendants paid the Deposit in full.

¶3 In addition to the Deposit and the purchase price, the Contract obligated Defendants: (1) "to pay a $1,000.00 on-site bond fee which is refundable subject to the terms of the bond"; (2) to install sidewalks on Lot 69; (3) "to pay $200 [for the] 1999 Home Owners Association Fee" (HOA Fee) and all future HOA Fees when due; and (4) "to pay all of 1999 property taxes in the amount of $1,314.20 ... [and] all future taxes on this property."

¶4 The balance of the purchase price for Lot 69—$88,340—was due at closing on January 31, 2000—a deadline Defendants failed to meet. However, paragraph J of the Contract (Paragraph J) provided:

In the event that the buyer does not close on or before January 31, 2000, buyer agrees to pay interest at a rate of 9½% per annum on the unpaid balance ... starting February 1, 2000 and continuing for a period not to exceed May 1, 2002, at that point buyer must close or contract is null and void and buyer forfeits all moneys paid. Interest only payments will be made quarterly with the first payment due May 1, 2000.

¶5 Defendants paid the on-site bond fee, the HOA fees, and the property taxes for 1999. They did not, however, pay the property taxes for 2000 and 2001, and did not make the agreed-upon interest payments.[3] Nevertheless, Defendants indicated continued interest in purchasing the property by attempting to market Lot 69 for resale through a real estate agent between February 1, 2000 and May 1, 2002, and recording a notice of interest in the property with the Salt Lake County Recorder on February 13, 2002.

¶6 On April 20, 2002, Plaintiff sent a letter to Defendants regarding the approaching, ultimate closing deadline of May 1, 2002. Defendants did not respond to Plaintiff's letter and failed to close on Lot 69. The Contract expired by its own terms on May 2, 2002. Plaintiff retained the Deposit, but had not received the interest or property tax payments owed by Defendants. The Contract contained the following default provision:

Failure of either party to comply with any material covenant, agreement, or obligation within the time limits required by this Contract shall constitute material default. Following a material default by either Buyer or Seller, the other party may pursue any remedies or damages available at law or in equity. Time is of the essence.

¶7 Plaintiff brought suit—stating several claims not relevant to this appeal—to recover the unpaid interest and property taxes, a total amount of $23,479.51, it claimed was due under the Contract. Defendants filed

---

1. Defendants do not contest Plaintiff's statement of facts, except Plaintiff's characterization of the Contract as an option contract. Accordingly, we recite the facts as presented by Plaintiff.

2. Along with Lot 69, Defendants contracted to purchase five other lots—lots 52, 53, 54, 55, and 75—from Plaintiff under three separate contracts. The parties also litigated ownership of lot

52 as part of the present dispute. Following a full day of trial, the parties reached a settlement regarding lot 52. This appeal involves only the trial court's decision regarding Lot 69.

3. Upon Defendants' request, however, Plaintiff forbore collection of the unpaid interest payments.

for summary judgment, arguing that their failure to close on or before May 1, 2002 triggered the forfeiture provision of the Contract, Paragraph J, entitling Plaintiff to only that money paid or previously retained. Alternatively, Defendants argued that, because Plaintiff retained the Deposit, Utah law deems Plaintiff to have elected its remedy under the forfeiture provision of the Contract, and Plaintiff is therefore precluded from bringing suit for specific performance or damages.

¶ 8 Plaintiff also sought summary judgment on its claims regarding Lot 69, arguing that the Contract was an option contract, in which Defendants bargained for the option to extend the closing date for Lot 69 from January 31, 2000 to May 1, 2002, by agreeing to pay interest on the balance of the purchase price, taxes on the property, a bond fee, and HOA fees, of which only the bond fee, HOA fees, and 1999 property taxes were paid. Accordingly, Plaintiff claimed that Defendants still owed the unpaid interest and taxes, as consideration for the option.

¶ 9 The trial court granted summary judgment against Plaintiff and in favor of Defendants, concluding that (1) the Contract was not an option contract but "a standard real estate contract which, by signing, both parties became obligated to fulfill"; (2) Defendants breached the Contract but "the forfeiture provision of [the Contract] limits plaintiff's recovery to those amounts already paid and does not include any unretained amounts still due and owning"; and (3) "[w]hen defendants failed to close by the designated time, plaintiff elected to retain the ... [Deposit] and is therefore precluded from recovering additional funds since the [Contract's] forfeiture provision specifically foreclosed such an option." Plaintiff appeals these conclusions.

## ISSUES AND STANDARD OF REVIEW

¶ 10 Plaintiff raises three issues on appeal: (1) whether the trial court correctly concluded that the Contract was a standard real estate contract rather than an option contract; (2) whether the trial court correctly concluded that the forfeiture provision of the Contract limits Plaintiff's recovery to only the amount actually paid by Defendants prior to May 1, 2002; and (3) whether Plaintiff's retention of the Deposit prior to commencing suit constitutes an election of remedies.

¶ 11 "In appeals from summary judgment, we review the facts in a light most favorable to the nonprevailing party. We review summary judgment under the 'correctness' standard, affording the trial court's legal conclusions no deference." *Palmer v. Hayes*, 892 P.2d 1059, 1061 (Utah Ct.App.1995) (internal citation omitted).

## ANALYSIS

### I. Option Contract

■ ¶ 12 Plaintiff argues that summary judgment for Defendants was inappropriate because the Contract was an option contract rather than a standard real estate contract. We agree.

■ ¶ 13 Generally, "an executed earnest money receipt and offer to purchase agreement is a contract binding on both parties." *Cahoon v. Cahoon*, 641 P.2d 140, 143 (Utah 1982). In contrast, an option is "a unilateral obligation binding only on the optionor." *Id.* "An option contract is a continuing offer, supported by consideration, which the promisor is bound to keep open." *Coulter & Smith, Ltd. v. Russell*, 966 P.2d 852, 859 (Utah 1998). "It is unique; the holder has 'the legal power to consummate a second contract ... and at the same time the legal privilege of not exercising it.'" *Id.* (alteration in original) (quoting *Property Assistance Corp. v. Roberts*, 768 P.2d 976, 978 (Utah Ct.App.1989)) (additional citation omitted). "An option consists of the following two elements: '(1) an offer to sell, which does not become a contract until accepted; and (2) a contract to leave the offer open for a specified time.'" *Id.* (quoting *Property Assistance Corp.*, 768 P.2d at 978). "Thus, by its terms, an option contract for real property requires one offer and acceptance of the exclusive right to purchase the property and another offer and acceptance for the actual transfer of the property." *Property Assistance Corp.*, 768 P.2d at 978.

¶ 14 "The contract to leave the option open for a specified time must be supported by consideration; without it the promisor is not bound." *Coulter & Smith*, 966 P.2d at 859. " 'Consideration is an act or promise, bargained for and given in exchange for a promise.' " *Id.* (quoting *Copper State Leasing Co. v. Blacker Appliance & Furniture Co.*, 770 P.2d 88, 91 (Utah 1988)) (additional quotations and citation omitted). "Consideration sufficient to support the garden variety contract will likewise support an option." *Id.* (quotations and citation omitted).

¶ 15 With these principles in mind, we examine the Contract to determine whether it warrants treatment as a standard real estate contract that "is binding on both parties" or an option agreement that is "binding only on the optionor." *Cahoon*, 641 P.2d at 143. "A cardinal rule in construing ... a contract is to give effect to the intentions of the parties." *Coulter & Smith*, 966 P.2d at 857 (alteration omitted) (quotations and citations omitted). "In interpreting a contract, ' "we look to the writing itself to ascertain the parties' intentions, and we consider each contract provision ... in relation to all of the others, with a view toward giving effect to all and ignoring none." ' " *WebBank v. American Gen. Annuity Serv. Corp.*, 2002 UT 88, ¶ 18, 54 P.3d 1139 (quoting *Jones v. ERA Brokers Consol.*, 2000 UT 61, ¶ 12, 6 P.3d 1129) (additional citations omitted).

¶ 16 The Contract in this case appears to be an unusual hybrid of a standard real estate contract and an option contract. On the one hand, the Contract has elements in common with a standard real estate sales contract in that it calls itself a "real estate sales contract"; provides for payment of a nonrefundable earnest money deposit; designates a date, place, and manner for closing; and contains promissory words by both parties, i.e., "Buyer agrees to purchase and Seller agrees to sell. . . ."

¶ 17 However, unlike a standard real estate sales contract, the Contract does not contain a provision requiring the seller to elect to either retain the earnest money deposit as liquidated damages, or return the deposit and sue for specific performance of the contract. *Cf. McKeon v. Crump*, 2002 UT App 258, ¶ 6, 53 P.3d 494 (clause provides: "If Buyer defaults, Seller may elect either to retain the Earnest Money Deposit as liquidated damages, or to return it and sue Buyer to specifically enforce this Contract or pursue other remedies available at law."). Such a provision indicates that the obligations of the contract are binding on both parties. By contrast, Paragraph J of the Contract provides:

In the event that the buyer does not close on or before January 31, 2000, buyer agrees to pay interest at a rate of 9½% per annum on the unpaid balance ... starting February 1, 2000 and continuing for a period not to exceed May 1, 2002, *at that point buyer must close or contract is null and void* and buyer forfeits all moneys paid. Interest only payments will be made quarterly with the first payment due May 1, 2000.

(Emphasis added.)

¶ 18 This provision distinguishes the Contract from standard real estate sales contracts, which typically do not contain cancellation provisions. Pursuant to Paragraph J, if Defendants failed to close on Lot 69 by May 1, 2002, the Contract was "null and void," and Defendants forfeited "all moneys paid." After making the initial payments required by the Contract, Defendants were free to change their minds about purchasing the property and walk away. As a result, the Contract was never binding on Defendants regarding the purchase of Lot 69; their promissory words were illusory. However, the Contract was binding on Plaintiff, insomuch as Plaintiff was prevented, by its acceptance of the Deposit, property taxes, a bond fee, and HOA fees under the terms of the Contract, from revoking its offer to Defendants or selling Lot 69 to other potential purchasers during the agreed-upon time period.

¶ 19 Accordingly, the transaction was not a bilateral contract, but an option contract. In other words, it was a "continuing offer, supported by" Defendants' payment of the Deposit, 1999 real estate taxes, 1999 HOA fees, and a bond fee as "consideration," which Plaintiff, as "promisor," was "bound to keep

open" until the expiration of the agreed-upon initial option period—January 31, 2000. *Coulter & Smith, Ltd. v. Russell*, 966 P.2d 852, 859 (Utah 1998); *see also* 3 *Corbin on Contracts* § 11.18 (rev. ed. 1996) ("If the written instrument purporting to be an 'agreement' to purchase and sell contains promissory words by both parties, but further provides that the 'purchaser' shall be privileged to make no further payments if the 'purchaser' so desires, the 'purchaser's' earlier words of apparent promise are nullified and the supposed promise is illusory. The transaction is then an option to buy.").

¶ 20 This does not resolve the present dispute, however. Under the terms of the Contract, Defendants could have accepted Plaintiff's offer to sell Lot 69, thereby exercising their option, only by paying the balance of the purchase price and closing on the property. *See Mills v. Brody*, 929 P.2d 360, 362–63 (Utah Ct.App.1996) ("Where an option agreement contains the terms 'purchase' or 'buy,' and particularly where no other mode of exercise is specified, courts have interpreted the agreement to require payment to exercise the option."). Defendants, as was their privilege, chose not to tender the purchase price by January 31, 2000 to accept Plaintiff's offer. However, this did not end the legal relations between the parties. Instead, Defendants' failure to close by January 31, 2000 triggered the provisions of Paragraph J, wherein "buyer agrees to pay interest at a rate of 9½% per annum on the unpaid balance ... starting February 1, 2000 and continuing for a period not to exceed May 1, 2002."

¶ 21 We conclude that this provision renewed Defendants' purchase option by extending the closing date for Lot 69 from January 31, 2000 to May 1, 2002.[4] As in the

original option agreement, the renewal provision grants Defendants the exclusive "legal power" to purchase Lot 69 until the end of the option period, now May 1, 2002, and yet does not require Defendants to purchase Lot 69. *See Coulter & Smith*, 966 P.2d at 859 (noting option holder has "the legal power to consummate a second contract ... and at the same time the legal privilege of not exercising it." (quotations and citation omitted)). The cost of this renewal was Defendants' promise "to pay interest at a rate of 9½% per annum on the unpaid balance," property taxes, and HOA fees during the extended option period.[5] Defendants indicated their assent to the renewal provision, and their obligation to pay for it, by signing the Contract, which contained Paragraph J. Moreover, the parties' actions were consistent with an ongoing option. Plaintiff did not sell Lot 69 to another purchaser or attempt to cancel the Contract prior to May 1, 2002. Meanwhile, Defendants marketed Lot 69 for resale through a real estate agent during the renewal period and recorded a notice of interest in Lot 69 on February 13, 2002. Defendants also asked Plaintiff to forbear enforcement of Defendants' obligation to pay interest. Having enjoyed the benefit of the agreement, Defendants cannot now avoid their obligation to pay for it. Accordingly, we conclude that Plaintiff is entitled to judgment for unpaid "interest at a rate of 9½% per annum on the unpaid balance" and unpaid property taxes for 2000 and 2001, which represent the agreed-upon consideration for extending the closing date from January 31, 2000 to May 1, 2002.

## II. Forfeiture Provision

¶ 22 Plaintiff also contends the trial court erred in holding that the Contract's

---

4. Provisions providing for the renewal or extension of an option are common in option contracts. *See, e.g., Gardner v. Christensen*, 622 P.2d 782, 782 (Utah 1980) (indicating buyer paid $1,000 for the original option to purchase real property, and "[l]ater, an extension of the time in which to exercise the option was obtained ... upon payment of another $1,000"); *Floor v. Johnson*, 114 Utah 313, 199 P.2d 547, 553 (1948) ("The option was exercisable on or before November 4, 1944, but was renewed each year under a provision of the option providing for

extensions from year to year ... by payment of the sum of $500 for the renewal each year.").

5. Although Defendants were obligated to pay future HOA fees "when due on the property" in exchange for the option to purchase Lot 69, Plaintiff has not claimed that there are any unpaid HOA fees due on the property. We are uncertain whether this is because Defendants paid them or they did not again come due before May 1, 2002.

forfeiture provision precluded their further recovery. In granting summary judgment for Defendants, the trial court concluded that (1) the forfeiture provision of Paragraph J, "limits plaintiff's recovery to those amounts already paid and does not include any unretained amounts still due and owing;" and (2) "when defendants' failed to close by the designated time, plaintiff elected to retain the [Deposit] and is therefore precluded from recovering additional funds since the [Contract's] forfeiture provision specifically foreclosed such an option." We disagree.

¶ 23 We first address the trial court's interpretation of the forfeiture provision of Paragraph J. Paragraph J states that if Defendants do not close on the property by May 1, 2002, the "contract is null and void and buyer forfeits all moneys paid." "Interpretation of the terms of a contract is a question of law. Thus, we accord the trial court's conclusions regarding the contract no deference and review them for correctness." *Nova Cas. Co. v. Able Constr., Inc.*, 1999 UT 69, ¶ 6, 983 P.2d 575.

¶ 24 Under the trial court's reasoning, because Plaintiff had not collected the agreed-upon interest and taxes by May 1, 2002, recovery was thereafter barred. In making this conclusion, the trial court relied on a rule of construction sometimes applied to interpret default clauses in standardized real estate contracts:

> "It is pertinent to observe that the attempt to enforce this clause of the contract is almost invariably against a purchaser who has been induced to sign it and deposit money under the impression that its forfeiture will be the extent of his loss if he decides not to buy the property. And the suit is by a seller who wants to be sure to keep the money in hand, and also seek additional relief. This clause is for the benefit of the seller. He will obviously always choose the option to his advantage and to the disadvantage of the buyer. Under those circumstances the clause should be strictly applied against the seller and he

should be held to meet its requirements with exactness."

*McKeon v. Crump*, 2002 UT App 258, ¶ 6, 53 P.3d 494 (quoting *Close v. Blumenthal*, 11 Utah 2d 51, 354 P.2d 856, 857 (1960)).

¶ 25 This rule is inapplicable to the case at bar. As stated, the Contract is not a standardized real estate contract but an option contract. Unlike a standardized real estate contract, in an option contract for the purchase of land, the primary beneficiary is not the seller of the option. Instead, it is the buyer—the option holder—who possesses the sole discretion to exercise the option to purchase the land. As such, the rationale behind strictly construing a forfeiture provision against the seller is absent from this case.

¶ 26 Additionally, the default clause strictly interpreted in *McKeon* is significantly different from Paragraph J, reading: "If Buyer defaults, Seller may elect either to retain the Earnest Money Deposit as liquidated damages, or to return it and sue Buyer to specifically enforce this Contract or pursue other remedies available at law." *Id.; see also Close*, 354 P.2d at 856–57 ("In the event purchaser fails to pay the balance of said purchase price, or complete said purchase as herein provided, the amounts paid hereon shall, at the option of the seller, be retained as liquidated and agreed damages." (quotations omitted)). Unlike the buyers in *McKeon*, in this case, Defendants' forfeiture was not limited to the Deposit. Rather, the Contract clearly contemplated that Defendants would pay interest, property taxes, and HOA fees, in addition to the Deposit, until closing or failure to close, as consideration for the option to purchase Lot 69. Furthermore, the Contract does not specify alternative remedies of either retaining the Deposit or pursuing other remedies, notably that of specific performance. As noted earlier, under an option agreement, the option holder may choose not to exercise the option.

¶ 27 Also significant is that Plaintiff forbore collecting the unpaid interest at Defendants' request.[6] "A person cannot avoid liability for the non-performance of his obli-

---

6. It may well be that Defendants would be estopped from denying they owed the interest because it had not been paid, where the reason for

nonpayment was because they requested the very forbearance that was extended them by Plaintiff.

gation by placing such performance beyond his control by his own voluntary act." *Cannon v. Stevens Sch. of Bus., Inc.*, 560 P.2d 1383, 1385 (Utah 1977).[7]

¶ 28 Accordingly, the trial court's strict interpretation of Paragraph J is untenable. Plaintiff is entitled to unpaid interest payments and property taxes, in addition to the Deposit, because those sums were part of the consideration promised by Defendants in exchange for the option provided by Plaintiff.[8]

## CONCLUSION

¶ 29 In sum, the Contract was an option contract, with a provision for renewal, which Plaintiff was bound to keep open until May 1, 2002. By paying the Deposit, 1999 property taxes, HOA fees, and a bond fee, Defendants paid the consideration to keep the option open until January 31, 2000; however, they still owe unpaid "interest at a rate of 9½% per annum on the unpaid balance" and property taxes for 2000 and 2001, which represent the agreed-upon consideration for extending the closing date from January 31, 2000 to May 1, 2002, the benefit of which bargain they received in full. In addition, the trial court's strict interpretation of the forfeiture provision of Paragraph J is untenable. The Contract clearly contemplated that Defendants would be liable for interest and property taxes during the option's term if they chose to extend the option to its maximum length, as they in fact did.

¶ 30 Therefore, we reverse the trial court's rulings in favor of Defendants and remand for further proceedings consistent with this opinion.

¶ 31 WE CONCUR: GREGORY K. ORME and WILLIAM A. THORNE JR., Judges.

---

7. Our conclusion on this issue makes it unnecessary to separately consider the trial court's alternative grounds for granting summary judgment for Defendants: that Plaintiff elected its remedy by retaining the Deposit, and it is "therefore precluded from recovering additional funds since the agreement's forfeiture provision specifically foreclosed such an option." The forfeiture provision did not foreclose recovery of these funds. Plaintiff is entitled to recovery of the agreed-upon interest payments and property taxes. This issue is therefore moot.

8. Defendants also argue that Plaintiff is not entitled to damages because Plaintiff was able to sell Lot 69 for a profit following Defendants' default. The general rule is that "[w]hen there is no decrease in value between the contract price and the fair market value at forfeiture, the seller may not recover loss of bargain damages." *Glezos v. Frontier Inv.*, 896 P.2d 1230, 1235 (Utah Ct.App. 1995). However, this rule is inapplicable to this case because the Contract is an option contract. Therefore, Plaintiff is entitled to unpaid interest and property taxes, not as damages, but as consideration for keeping the option open for an extended period.