44 P.3d 642 (2001)
2001 UT 108
Alayna J. CULBERTSON and Diane Pearl Meibos, Plaintiffs and Appellants,
v.
BOARD OF COUNTY COMMISSIONERS OF SALT LAKE COUNTY and Ken Jones, in his capacity as Director of Development Services for Salt Lake County, Defendants and Appellees.
Eva C. Johnson, an individual; Diane Pearl Meibos, an individual; Alayna J. Culbertson, an individual; and Blaine Johnson, an individual, Plaintiffs and Appellants,
v.
Hermes Associates, Ltd., a Utah limited partnership; Nick S. Vidalakis, an individual; J. Rees Jensen, an individual; Fort Union Associates L.C., a Utah limited liability company; and Does 1-10, Defendants and Appellees.
Nos. 981279, 981659.
Supreme Court of Utah.
December 18, 2001.
Rehearing Denied April 10, 2002.
*645 Ronald G. Russell, Jeffrey J. Hunt, Salt Lake City, for plaintiffs.
Jay D. Gurmankin, Douglas R. Short, Patrick F. Holden, Chris R. Hogle, Salt Lake City, for Board of County Commissioners, Ken Jones.
Mark O. Morris, David N. Wolf, Salt Lake City, for Hermes Associates, Nick S. Vidalakis, J. Rees Jensen, Fort Union Associates, Does 1-10.
HOWE, Chief Justice.

INTRODUCTION
¶ 1 Plaintiffs Alayna J. Culbertson and Diane Pearl Meibos brought these actions, one against the Board of County Commissioners of Salt Lake County and Ken Jones (collectively, the County), and one against Hermes Associates, Ltd., Nick Vidalakis, J. Rees Jensen, and Fort Union Associates, L.C., (collectively, Hermes)[1] for declaratory and injunctive relief and damages relating to the expansion of Hermes's Family Center in Salt Lake County. Cross-motions for summary judgment were filed in each case, and summary judgments were granted to the defendants in both cases. In No. 981279, plaintiffs appealed after they allegedly exhausted their administrative remedies, and the case was transferred to the court of appeals, which had original jurisdiction under Utah Code Ann. section 78-2a-3(2)(b)(i). In No. 981659, plaintiffs appealed to this *646 court from an adverse judgment over which this court has jurisdiction under section 78-2-2(3)(j). Because the issues in both cases share underlying common facts, the parties successfully petitioned the court of appeals for certification of No. 981279 to this court as permitted by rule 43(b)(1) of the Utah Rules of Appellate Procedure. After certification, this court consolidated the two cases to assure consistent judgments in these intimately related appeals.

BACKGROUND
¶ 2 In 1991, Hermes sought to expand the Family Center, a shopping complex located between 900 East and Union Park Avenue in what was then unincorporated Salt Lake County.[2] Although Hermes owned or was able to purchase most of the land it sought to develop, it was unable to acquire from plaintiffs and their predecessors in title, Eugene and Gloria Croxford, a tract of property (the Croxford property) on the south side of the proposed project site. Ultimately, Hermes's site plan excluded the Croxford property, and Hermes was required to obtain a conditional use permit (CUP) from the County to continue the project. Hermes's site plan and CUP were given preliminary approval subject to several conditions including "[a]pproval of the street vacation plan by the County Commission."
¶ 3 The Croxford property abuts on the south side of North Union Avenue. The avenue had been used and maintained as a county street for many years, providing access to houses on the street, including two houses and garages on the Croxford property. To accommodate the expansion of the shopping center, the County in August 1994 passed Ordinance 1275 (the Ordinance), which vacated North Union Avenue between 1000 East and 1300 East, except for the segment of the avenue in front of the Croxford property. There, the avenue is 33 feet wide. The Ordinance vacated the north eight feet of the width of that segment which reverted to Hermes because Hermes owned the property abutting on the north side of the avenue. The Ordinance "permanently closed" the remaining twenty-five feet of the width of that segment. The County stated in the Ordinance that it was "closing" rather than vacating the twenty-five-foot segment so that it could "convey an access easement over said property to Hermes [and the owners of the Croxford property], which will allow better access to their respective properties than by having the property revert as a matter of law, half to each by vacation."[3]
¶ 4 The Ordinance also provided that the owners of the Croxford property would "still have direct access to 7240 South and [would] be provided additional access to the north side of the property from 7240 South through a 25 foot wide public right-of-way" that Hermes was to convey to the County. Pursuant to the Ordinance, Hermes granted the County an "easement for public right of way" extending north from 7240 South to the closed portion of North Union Avenue along the west border of the Croxford property. That public right-of-way has been designated 1070 East Street.
¶ 5 Hermes's site plan and CUP were given final approval by the County on July 28, 1994, and construction on the building labeled on the site plan "retail 3," or the Ernst Home Center Building (Ernst building), began shortly thereafter. The final version of the CUP requires that "[h]ighback curb, gutter and sidewalk . . . be installed along the property lines which abut any public road or street" (emphasis added), and the final site plan approval states, "Conditions of this approval are in addition to the requirements of other Salt Lake Co. Ordinances."
¶ 6 Plaintiffs notified Hermes and the County (collectively, defendants) twice through legal counsel that the Ernst building encroached upon 1070 East Street, restricting access to their property. They asked the County to enforce the applicable ordinances, building codes, and Hermes's CUP to stop *647 the encroachment and ensure that 1070 East Street complied with county roadway standards. Finally, plaintiffs filed an action (Culbertson I) challenging the adoption of the Ordinance both substantively and procedurally and requesting enforcement of county roadway standards and the CUP.[4] The Culbertson I district court dismissed the 1994 actionall claims in the second amended complaint "relating to [the Ordinance] as passed by the Board of . . . [c]ommissioners" with prejudice and all other claims in the second amended complaint without prejudice, directing plaintiffs to exhaust their administrative remedies before refiling these claims. Plaintiffs appealed the court's ruling, but the court of appeals dismissed the appeal for lack of jurisdiction because the notice of appeal was not timely filed.
¶ 7 Shortly after the Culbertson I court's ruling, Hermes petitioned the County to except 1070 East Street and North Union Avenue from its roadway standards pursuant to chapter 14.12.150 of the Salt Lake County Code of Ordinances.[5] The County granted the exceptions in June 1995, after receiving favorable recommendations from the public works engineering division director, the division of development services, and the planning commission.
¶ 8 Plaintiffs, after pursuing certain administrative remedies, then filed the instant actions alleging that the Ernst building and the building labeled "retail 2" (the Future Shop building) on the site plan were built in violation of county zoning ordinances, county roadway standards, and the CUP because they encroached upon North Union Avenue and 1070 East Street and because the buildings were built without the proper setbacks and landscaping. The back wall of the Future Shop building was built on the vacated eight-foot-wide strip of the former North Union Avenue that ran in front of plaintiffs' homes, parallel to the closed twenty-five-foot segment. Plaintiffs alleged that these violations deprived them of adequate access to their property. They prayed for a declaration that the buildings violated the above ordinances and the CUP and sought to invalidate the roadway standards exceptions granted to Hermes by the County. In addition, they petitioned the court to order the County to enforce its ordinances and the CUP by removing the offending portions of the buildings, and also sought damages from Hermes.
¶ 9 Plaintiffs moved for summary judgment on their claims. Defendants cross-moved, contending that plaintiffs' actions were barred by res judicata because the claims had been fully litigated in Culbertson I and asserting that plaintiffs had failed to exhaust their administrative remedies. Defendants also argued that plaintiffs had adequate access to their property, that the buildings were in full compliance with all ordinances and permits, and that because North Union Avenue and 1070 East Street are not public streets, they do not have to comply with the CUP or county ordinance requirements for public streets.
¶ 10 The Culbertson II district court held that res judicata did not bar plaintiffs' claims and that they had exhausted their administrative remedies. But it granted defendants' motions for summary judgment, concluding that North Union Avenue and 1070 East Street are not public streets and therefore do not violate the CUP or county ordinance requirements for public streets. The Culbertson II court also held that the "construction of the shopping center complied with all applicable zoning and roadway ordinances." Plaintiffs appeal from those judgments.

STANDARD OF REVIEW
¶ 11 "Summary judgment is appropriate only when no genuine issues of material fact exist and the moving party is entitled to *648 judgment as a matter of law." Jones v. ERA Brokers Consol., 2000 UT 61, ¶ 8, 6 P.3d 1129; see also Utah R. Civ. P. 56(c). "We review a trial court's grant of summary judgment for correctness, giving no deference to its conclusions of law." Id. (citing Plateau Mining Co. v. Utah Div. of State Lands & Forestry, 802 P.2d 720, 725 (Utah 1990)).

ANALYSIS

I. RES JUDICATA
¶ 12 Defendants contend that plaintiffs' actions are barred by res judicata because the Culbertson I court dismissed with prejudice all claims "relating to" the Ordinance. The doctrine of res judicata describes the binding effect of a previous adjudication on a current adjudication. See 18 Charles Alan Wright et al., Federal Practice and Procedure § 4402 (1981). We have used the general term "res judicata" as an umbrella to refer to two distinct branches of the doctrine: claim preclusion and issue preclusion.[6]See Macris & Assocs., Inc. v. Neways, Inc., 2000 UT 93, ¶ 19, 16 P.3d 1214 (citing Swainston v. Intermountain Health Care, 766 P.2d 1059, 1061 (Utah 1988)). Although both branches of res judicata "`serve[ ] the important policy of preventing previously litigated issues from being relitigated,'" different rules apply to each. Id. (alteration in original) (quoting Salt Lake City v. Silver Fork Pipeline Corp., 913 P.2d 731, 733 (Utah 1995)). We will address each in turn.
¶ 13 In general terms, claim preclusion bars a party from prosecuting in a subsequent action a claim that has been fully litigated previously. See Silver Fork Pipeline, 913 P.2d at 733. For claim preclusion to bar a claim in a subsequent action, (1) the subsequent action must involve the same parties, their privies, or their assigns as the first action, (2) the claim to be barred must have been brought or have been available in the first action, and (3) the first action must have produced a final judgment on the merits of the claim. See Fitzgerald v. Corbett, 793 P.2d 356, 359 (Utah 1990).
¶ 14 It is undisputed that the parties to this action are the same as the parties in Culbertson I. Thus, to determine whether Culbertson I bars any and all claims relating to the Ordinance, as defendants assert it does, we must decide which of plaintiffs' claims relating to the Ordinance were brought (or if not, whether they were available) in Culbertson I and whether they were finally adjudicated on their merits in that case. See id. Plaintiffs' Culbertson I claims pertinent to this question include: (1) violation of the statutory notice requirements in enacting the Ordinance for which they sought rescission of the Ordinance; and (2) enforcement of zoning and roadway ordinances and the denial of reasonable access to their property because of the vacation and closure of North Union Avenue provided for in the Ordinance for which they sought declaratory and injunctive relief.[7] We must determine whether either of these two claims was adjudicated on its merits in the previous action. Determinative of this question is the summary judgment order from Culbertson I, which dismissed portions of the complaint with prejudice and portions without prejudice. Unfortunately, this order is ambiguous as to which portions are dismissed with prejudice, so we must construe it accordingly.
¶ 15 We construe an ambiguous order under the rules that apply to other legal documents. Specifically, we look to the language of the order, and we "`[may] resort... to the pleadings and findings. Where construction is called for, it is the duty of the court to interpret an ambiguity [in a manner that makes] the judgment more reasonable, effective, conclusive, and [that] brings the judgment into harmony with the facts and the law.'" Park City Utah Corp. v. Ensign Co., 586 P.2d 446, 450 (Utah 1978) (quoting *649 Moon Lake Water Users Assoc. v. Hanson, 535 P.2d 1262, 1264 (Utah 1975)). In addition, we construe any ambiguities in the order against the prevailing parties who drafted it, which in this case are the defendants. See Nielsen v. O'Reilly, 848 P.2d 664, 665 (Utah 1992) (stating that "courts construe contracts against their drafters").
¶ 16 The Culbertson I summary judgment order provides:
IT IS HEREBY ORDERED, DECREED, AND ADJUDGED that plaintiffs' claims as contained within plaintiffs' second amended complaint, relating to that certain Salt Lake County Ordinance as passed by the Board of Salt Lake County Commissioners, to-wit, ordinance number 1275 ... be and the same are hereby dismissed with prejudice; and
FURTHER, ORDERED that plaintiffs' all other claims as asserted against defendants in plaintiffs' second amended complaint be dismissed without prejudice; and
FURTHER, ORDERED that plaintiffs' second amended complaint be and the same is hereby dismissed without prejudice.
¶ 17 Defendants contend that the language of this order clearly shows an intent to validate the Ordinance and to dismiss with prejudice any and all claims related to it, including its construction. We reject this interpretation and hold instead that the order dismissed with prejudice only plaintiffs' claims that the County had not given the proper notice before passing the Ordinance, and thus does not bar plaintiffs' claims that require construction of the Ordinance, including their lack of access and enforcement of zoning ordinance claims. We come to this conclusion by looking first to the language of the order and then at the transcripts of two hearings held previous to the order's issuance.
¶ 18 Plaintiffs contend that the words in the order referring to the Ordinance "as passed by the Board of Salt Lake County Commissioners" (emphasis added) can refer only to their claim that the Ordinance was passed in violation of zoning notice requirements. Combining the use of the phrase "as passed by the board," with the inferences drawn in the forthcoming review of the record, and construing the order against the prevailing party as we must, we accept plaintiffs' conclusion.
¶ 19 We review the transcripts of two hearings held previous to the issuance of the order that are significant to its interpretation. The first hearing (amendment hearing) was held January 30, 1995, to resolve, inter alia, plaintiffs' motion to amend their complaint.[8] In its concluding remarks, the court stated it would allow plaintiffs to amend their complaint to include claims for injunctive relief. The following discussion then ensued between counsel for defendants and the court:
Mr. Colessides: Your Honor, clarification for just one moment.
The Court: Yes.
Mr. Colessides:.... As I see the second amended complaint they are going to be filing another version of it and wherein, as I understand it, they do not seek to invalidate the ordinance, am I correct?
The Court: That's what was represented.
Mr. Colessides: And that issue is dead.
The Court: Plus I have told them they would amend to not include damages and so only as to the injunctive relief as to have the county enforce its own ordinance, that will be the limitations on the amendments. *650 We are unable to discern from this transcript which issues relating to the Ordinance are "dead." According to the record, no written order was entered following this Culbertson I amendment hearing.
¶ 20 We look for illumination to the second hearing in which the matter was again discussed. This hearing, which resulted in the Culbertson I summary judgment order, was held March 29, 1995. Although the record on appeal does not include copies of the parties' summary judgment memoranda and pleadings, the ruling resulting from the earlier amendment hearing was "at the heart of" the discussion.
¶ 21 Defendants contended at this hearing that plaintiffs had at the earlier amendment hearing waived any right to attack the Ordinance and that the resulting ruling meant that the "issues" regarding the procedure followed in passing the Ordinance and the legality of the Ordinance were both "dead." Thus, they argued, plaintiffs could no longer amend their complaint to seek, directly or collaterally, a declaration that the ordinance was illegal.
¶ 22 Plaintiffs countered that the only limitation the Culbertson I court placed on their right to amend was that they were required to wait for their damages claims to become ripe before they filed them. Plaintiffs asserted that they had not at the amendment hearing waived any right to later challenge the legality of the Ordinance.
¶ 23 The Culbertson I court did not resolve this dispute. At one point in the hearing, the court stated: "As to the passage of the ordinance, I think the court has already ruled on that." We presume that it is referring here to its ruling at the amendment hearing; the reference would seem to indicate that the issue that was declared "dead" at the amendment hearing was the procedural issue of improper notice in passing the Ordinance.
¶ 24 After both counsel had submitted their arguments, the court stated that it was "going to dismiss this matter without prejudice" so that plaintiffs could refile after pursuing other remedies. Then the court said that "the vacation ordinance is subject to a previous order that I made," which order we assume to be the one resulting from the amendment hearing. It can be inferred that the court, in referring to "the passage of the ordinance" being subject to a previous order, intended to dismiss only the procedural claim with prejudice. This inference, combined with the language of the order, brings us to the conclusion that the only claim relating to the Ordinance dismissed with prejudice in Culbertson I was plaintiffs' claim that the County had failed to follow the notice requirements in passing it. Therefore, we affirm the Culbertson II district court's ruling that plaintiffs' claims in this case are not barred by claim preclusion.
¶ 25 We next review defendants' assertions of issue preclusion. Issue preclusion prevents the relitigation of issues in a subsequent action. For issue preclusion to lie, four criteria must be met:
(i) the party against whom issue preclusion is asserted must have been a party to or in privity with a party to the prior adjudication; (ii) the issue decided in the prior adjudication must be identical to the one presented in the instant action; (iii) the issue in the first action must have been completely, fully, and fairly litigated; and (iv) the first suit must have resulted in a final judgment on the merits.
Murdock, 1999 UT 39 at ¶ 18, 982 P.2d 65 (citing Career Serv. Review Bd. v. Utah Dep't of Corr., 942 P.2d 933, 938 (Utah 1997)).
¶ 26 Defendants contend that plaintiffs' claims relating to the Ordinance are barred because the Ordinance was found valid in Culbertson I and plaintiffs' current claims "necessarily constitute a direct challenge to [it]." Again we reject defendants' contention; it does not meet the second prong of the test. As we stated previously, the only claim relating to the Ordinance dismissed with prejudice in Culbertson I was the lack of notice claim. The Culbertson I court's order validated the procedure followed in passing the Ordinance, but not its content and meaning. In addition, as the Culbertson II court stated, "[the Culbertson I court] did not interpret Ordinance No. 1275 as to its meaning and effect. Therefore, plaintiffs' claims are not barred by the doctrines *651 of res judicata, collateral estoppel or law of the case." We affirm this conclusion.[9]

II. EXHAUSTING ADMINISTRATIVE REMEDIES
¶ 27 In granting summary judgment, the Culbertson II court concluded that plaintiffs had exhausted their administrative remedies and thus were entitled to bring their actions in the district court. Defendants contest this holding on two grounds. First, they contend that plaintiffs did not exhaust all available administrative remedies on their cause of action to enforce compliance with zoning ordinances and the CUP (enforcement claims) because they did not pursue each remedy mentioned by the Culbertson I court when it dismissed plaintiffs' complaint.[10] Second, defendants contend that plaintiffs failed to exhaust their administrative remedies on their roadway exceptions claim because they "failed to voice their particular objections" to the exceptions at the planning and county commission hearings on the issue. We address each argument in turn.
¶ 28 Parties are often required to exhaust prescribed administrative remedies before pursuing relief in court. This requirement "serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency," McCarthy v. Madigan, 503 U.S. 140, 145, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992), by allowing an agency to correct its own mistakes and apply its expertise in resolving conflict and by creating a factual record for judicial review, respectively. See id.;[11]see also Union Pac. R.R. v. Structural Steel & Forge Co., 9 Utah 2d 318, 320, 344 P.2d 157, 158 (1959). Parties must exhaust administrative remedies when so required by a relevant statute or ordinance. See Vaccaro v. City of Omaha, 254 Neb. 800, 579 N.W.2d 535, 538 (1998) ("[W]here [a] statute [does] not require the exhaustion of administrative remedies, we [have] held such exhaustion [is] not a jurisdictional prerequisite to instituting legal action."); cf. McCarthy, 503 U.S. at 144, 112 S.Ct. 1081 (stating exhaustion is in sound discretion of court unless specifically required by Congress). Thus, before we decide whether plaintiffs exhausted all available administrative remedies, we must determine whether they were statutorily required to do so.[12]

A. Enforcement Claims
¶ 29 Section 1001 of the County Land Use Development and Management Act (Land Use Act) provides that "[n]o person may challenge in district court a county's land use decisions made under this chapter or under the regulation made under authority of this chapter until they have exhausted their administrative remedies." Utah Code Ann. § 17-27-1001(1) (1996). The County asserts that plaintiffs were required under *652 section 1001 to exhaust all administrative remedies, including those prescribed by, the Culbertson I court before filing their enforcement claims in district court. We disagree.
¶ 30 Section 1001 applies only when a party desires to challenge a land use decision.[13] Plaintiffs do not challenge any decisions made under the Land Use Act, but instead seek enforcement of decisions made pursuant to it, i.e., zoning ordinance and the CUP. Enforcement of the act and ordinances made pursuant to it is addressed in 1002, which provides that
(a) ... any owner of real estate within the county in which violations of this chapter or ordinances enacted under the authority of this chapter occur or are about to occur may, in addition to other remedies provided by law, institute:
(i) injunctions, mandamus, abatement, or any other appropriate actions; or
(ii) proceedings to prevent, enjoin, abate, or remove the unlawful building, use, or act.
Utah Code Ann. § 17-27-1002 (1999).
¶ 31 Because plaintiffs own real estate in Salt Lake County where the alleged violations of the Land Use Act occurred, they are permitted to seek enforcement of ordinances made pursuant to the Act directly in district court without first exhausting administrative remedies. Thus, the Culbertson I court's ruling that plaintiffs were required to exhaust administrative remedies before refiling their zoning ordinance and CUP enforcement claims was erroneous.

B. Roadway Standards
¶ 32 The County also contends that plaintiffs failed to exhaust their administrative remedies on their roadway standards exceptions claim by not voicing particular objections at either the planning or the county commission hearings on the exceptions. Specifically, the County asserts that by not arguing in those hearings that no unusual topographic or aesthetic condition existed to justify an exception, as required by the ordinance, plaintiffs failed to give the County an opportunity to address those issues at the County level. One of the plaintiffs attended those hearings and argued against the granting of the exceptions, but she did not articulate that particular argument to the planning commission or the county commission. Before determining whether plaintiffs' exceptions claim is barred for failure to exhaust, we must review the applicable legislation to determine whether exhaustion was required.
¶ 33 Chapter 14.12 of the Salt Lake County Ordinances is entitled "Standards for Roadway Development," and it provides guidelines for all "public and private roadway development located within the unincorporated county." Salt Lake County Code of Ordinances § 14.12.020 (1992). Section 14.12.150 of this chapter provides:
In cases where unusual topographical, aesthetic, or other exceptional conditions or circumstances exist, variations or exceptions to the requirements of this chapter may be approved by the county commission after receiving recommendations from the planning commission and the public works engineer; provided, that the variations or exceptions are not detrimental to the public safety or welfare.
Salt Lake County Code of Ordinances § 14.12.150 (1992). We note the absence of any requirement of exhaustion before seeking review of the commission's decision in district court. The County has not referred us to nor have we discovered any other ordinance or statute requiring a party to exhaust any remedies before challenging the grant or denial of a request for exceptions to the county roadway standards in district court.
¶ 34 Because there is no statute or ordinance mandating exhaustion before seeking review of exceptions to county roadway standards, we must determine whether exhaustion is required in this case. Cf. McCarthy, 503 U.S. at 144, 112 S.Ct. 1081 (stating that court has discretion to mandate exhaustion when Congress silent on the issue). We decide that it is not required. Moreover, the County could not have been prejudiced by any failure of plaintiffs to articulate the precise argument that they are now making to *653 this court. The County had its ordinance before it and does not assert that it was unaware of the standard it had to meet to grant the exceptions. See Salt Lake County Code of Ordinances § 14.12.150 (1992).

III. COUNTY VIOLATION OF CUP AND OTHER ORDINANCES
¶ 35 Plaintiffs seek a declaration that 1070 East and North Union Avenue do not comply with the Salt Lake County Roadway Standards. Specifically, they allege: (1) that 1070 East is less than twenty-one feet wide and that the remaining segment of North Union Avenue is now less than or equal to nineteen feet wide, when both should have a right-of-way width of forty-two feet and a pavement width of at least twenty-five feet pursuant to section 14.12.100(a) of the Salt Lake County Code of Ordinances, (2) that the intersection of the two streets violates section 14.12.120(a) because it has a radius of less than twenty-five feet, and (3) that the abrupt dead end of North Union Avenue violates section 14.12.080(a) of the county ordinances, which requires all turnarounds and cul-de-sacs to have a minimum right-of-way radius of fifty feet. Plaintiffs also seek a declaration that Hermes's construction of the Ernst and Future Shop buildings violates the CUP[14] and sections 19.76.155[15] and 19.76.210[16] of the county code for the lack of twenty-foot landscaped setbacks and curb, gutter, and sidewalk improvements along 1070 East and North Union Avenue. They seek enforcement of these ordinances.
¶ 36 Defendants do not dispute that these buildings were built without twenty-foot set-backs from 1070 East and North Union Avenue, that those streets lack curbs, gutters, and sidewalks, or that they do not meet the width requirements for local public streets set out in the county roadway standards. They do, however, dispute whether those standards apply to the buildings. The resolution of that dispute depends on whether 1070 East and North Union Avenue are public streets for purposes of the CUP and county zoning and roadway ordinances, which in turn depends on the meaning and effect of Ordinance 1275 and the grant of easement referred to therein.
¶ 37 The district court held that Ordinance 1275 "altered the legal character" of North Union Avenue, making it an access easement, not a public street. It also determined that 1070 East is an access easement rather than a public street by virtue of Ordinance 1275 and the grant of easement. The district court stated as an alternate ground for its ruling granting summary judgment that Ken Jones, the director of the Division of Development Services and the county official charged with enforcing county zoning ordinances, see Salt Lake County Code of Ordinances § 19.94.010 (1983), was entitled to deference in his decision that the buildings complied with all applicable ordinances. Plaintiffs contest the district court's interpretation and assert that Ken Jones's determination concerning Hermes's compliance with county ordinances was erroneous. They seek a declaration that North Union Avenue and 1070 East are public streets subject to the requirements listed above.

A. North Union Avenue
¶ 38 To determine whether North Union Avenue and 1070 East are subject to *654 the above-mentioned requirements of the CUP and county ordinances, we first review the district court's conclusion that they are not public streets. Section 19.04.515 defines a street as
a thoroughfare which has been dedicated or abandoned to the public and accepted by proper public authority, or a thoroughfare, not less than twenty-five feet wide, which has been made public by right of use and which affords the principal means of access to abutting property.
Salt Lake County Code of Ordinances § 19.04.515 (1997). Thus, a street is a thoroughfare[17] that is (1) dedicated or abandoned to the public, or (2) made public by private right of use, and (3) the principal means of access to abutting property.
¶ 39 The Utah Code provides, "All public highways once established shall continue to be highways until abandoned or vacated by order of [competent] authorities." Utah Code Ann. § 72-5-105 (Supp.2000). Section 72-1-102 of the Utah Code includes "any public road, street, alley, [or] lane ... laid out ... for public use, or dedicated or abandoned to the public" in its definition of highway. We stated in Heber City Corp. v. Simpson that section 72-5-105[18] provides "the only method for eliminating the `public' status of a public highway." 942 P.2d 307, 313 (Utah 1997). Thus, once dedicated as a public street, North Union Avenue continues the same "until abandoned or vacated." Id.
¶ 40 It is undisputed that North Union Avenue, before the adoption of Ordinance 1275, was a public street under the above definition. It was a thoroughfare, or a "way through which there is passing or travel," Morris v. Blunt, 49 Utah 243, 251, 161 P. 1127, 1131 (1916). Defendants do not dispute that it was dedicated as a public street on the recording of the original Fort Union plat in 1857 or that it provided the principal access to abutting property including the Croxford property. The question then becomes whether Ordinance 1275 constitutes an order abandoning or vacating the closed portion of North Union Avenue as per section 72-5-105.
¶ 41 Ordinance 1275 provides that "the segment of North Union Avenue described... is being closed rather than vacated" and that "the segments of said public highway[] being vacated and the segment being closed are not needed as a public highway or a public right of way." The district court held that in enacting the ordinance, the County "properly vacated and closed North Union [Avenue]," following the requirements set out in section 72-5-105. We disagree.
¶ 42 Section 72-5-105 plainly provides that a public highway remains a highway until the proper authorities order it "abandoned or vacated." The trial court erred in concluding that the County followed the sections of the Utah Code for vacating public streets. The County specifically stated in Ordinance 1275 that the segment of North Union Avenue abutting the Croxford property was not being vacated, except for the north eight feet, and there is no evidence in the record of any other order of abandonment or vacation. We conclude that the trial court's and Ken Jones's decision that this portion of North Union Avenue is not a public street is erroneous and hold that the twenty-five-foot-wide closed portion of North Union abutting the Croxford property remains a public highway, or a public street, for purposes of the Salt Lake County ordinances. Although a public road may be closed temporarily, see Utah Code Ann. § 72-6-114 (Supp.2000), defendants offer no authority for the proposition that a public road can lose its legal status as a public road by being permanently closed rather than vacated.[19]
*655 ¶ 43 Because the segment of North Union Avenue bordering the Croxford property is a public street, the County must comply with the CUP and all other county zoning and roadway ordinances. To the extent there is not compliance, the County and Hermes are in violation of the CUP and the zoning and roadway ordinances and were improperly granted summary judgment.

B. 1070 East
¶ 44 The trial court held that 1070 East was created by a grant of easement from Hermes to the County and was not a public street. It came to that conclusion because of the terms of the grant of easement, including the fact that the right-of-way was to be used for the "express permitted purpose of only ingress and egress of all pedestrian and vehicular traffic" of the County and that Hermes held a right of reversion on the right-of-way. The trial court also justified its decision under section 17-27-1001(3) of the Utah Code, which grants deference to a County's land use decisions, including Ken Jones's determination that 1070 East is not a street.
¶ 45 In reviewing the district court's decision, we look again to the definition of a street in the county code. A street is a thoroughfare that is (1) dedicated or abandoned to the public or (2) made public by private right of use and the principal means of access to abutting property. See Salt Lake County Code of Ordinances § 19.04.515 (1997). The "street" designated 1070 East cannot be considered public by right of use because it clearly has not previously existed, let alone been used by the public, for a period of ten years. See Utah Code Ann. § 72-5-104 (Supp.2000). Thus, to be public, 1070 East must be dedicated as public in the instrument of its creation. It was created by a "Grant of Easement for Public Right of Way," which was conveyed by Hermes to the County. This instrument reads, in pertinent part:
Hermes[,] GRANTOR, as a requirement and in consideration of the passage of [Ordinance 1275] hereby GRANTS to: SALT LAKE COUNTY, ... GRANTEE, an easement for a public right of way for the express permitted purpose of only ingress and egress of all pedestrian and vehicular traffic of GRANTEE and its permitted assignees, and successors in interest, over and above ... certain real property.... Reserving upon GRANTOR, the right of the automatic reversion of said easement to the GRANTOR, in the event that GRANTOR acquires those certain lots.[20]
Ordinance 1275 required Hermes to convey a twenty-five-foot-wide public right-of-way to the County to provide access to the north (or front) side of the Croxford property from 7240 South, which is unquestionably a public street. The instrument creating the right-of-way accordingly describes the right-of-way as being "public," and for the purpose of providing ingress and egress of all pedestrian and vehicular traffic of the County and its permitted assignees. A County ordinance defines a "private roadway" as a "roadway in private ownership which is controlled and maintained by the owners and not the County." Salt Lake County Code of Ordinances § 14.12.010(L) (1992). Clearly, 1070 East does not fit that definition. It is owned and controlled by the County.
¶ 46 We therefore hold that the right-of-way is public. The County does not contend that it has taken any measures to restrict who may use the right-of-way and does not dispute that as a matter of fact, it is open to the public. Nor do we think that because Hermes has an automatic reversion in the event that it ever acquires the Croxford property, the right-of-way is necessarily made private and not public. In sum, because 1070 East is a public way, it is subject *656 to county zoning and roadway ordinances and the CUP.

IV. ROADWAY STANDARDS EXEMPTIONS
¶ 47 Although Hermes believed that under Ordinance 1275, the closed portion of North Union Avenue and 1070 East were not public streets subject to county roadway standards for such streets, out of an abundance of caution Hermes requested the County to grant it exceptions from those standards. The County, based on recommendations of various county officials and their staff, granted the exceptions in June 1995. We review this decision under the standard set forth in section 17-27-1001 of the Utah Code. Subsection 3 provides that courts shall "presume that land use decisions and regulations are valid; and ... determine only whether or not the decision is arbitrary, capricious, or illegal." Utah Code Ann. § 17-27-1001(3) (1999).
¶ 48 Plaintiffs contend this grant of exception was erroneous because the County did not follow its own rule for granting exceptions. Chapter 14.12.150 of the Salt Lake County Ordinances provides that the county commission may grant exceptions to the roadway standards where "unusual topographical, aesthetic or other exceptional conditions or circumstances exist ... after receiving recommendations from the planning commission and the public works engineer, provided that the variations or exceptions are not detrimental to the public safety or welfare." While the County received the required recommendations, nothing suggests any "unusual topographical, aesthetic or other exceptional conditions or circumstances," other than the conditions or circumstances the County created when it improperly attempted to transform North Union Avenue from a public street to a "closed street" and when it erroneously took the position that 1070 East was a private way. The County does not contend that there were any topographical or aesthetic conditions which justified the exceptions. Under the principle of ejusdem generis where an enumeration of particular or specific terms is followed by a general term, the general term must be restricted to include things of the same kind, or character, as those specifically enumerated, unless there is something to show a contrary intent. See Parrish v. Richards, 8 Utah 2d 419, 421-22, 336 P.2d 122, 123 (1959). Therefore, under that principle, "exceptional conditions or circumstances" which are mentioned in the ordinance as justifying an exception cannot be stretched to include conditions self-imposed by the County when it unlawfully attempted to "close" a public street.
¶ 49 Defendants seek to justify the exceptions on the ground that the access provided to plaintiffs was, as Ken Jones stated, "pretty standard and typical." He added "with two houses back there a 20-foot wide access would have been a typical access that we would have provided anywhere else." That response, of course, simply begs the question and is not persuasive. The County correctly points out that it widened 7240 South and improved it with curb, gutter, and sidewalk. However, that street does not run to the frontage of the Croxford property where the two houses are located. That street runs only to the southwest (rear) corner of the property from where a vehicle must then travel north on 1070 East and then east on the "closed" segment of North Union Avenue to the property. Large garbage and fire trucks would at that point have to use the property and its driveways to turn around since the closed portion of North Union Avenue is not more than twenty-five-feet wide and no cul-de-sac is provided at the end of the segment of the street. We conclude that the exceptions were erroneously granted.

V. REMEDY
¶ 50 Plaintiffs seek declaratory and injunctive relief and damages. We have declared that the closed portion of North Union Avenue as well as 1070 East are public streets subject to the requirements of the Salt Lake County Roadway Standards, the CUP, and other county zoning ordinances. Based on these declarations, plaintiffs seek an injunction requiring removal of the offending portions of Hermes's buildings and reconfiguration of the roadways to comply with the CUP *657 and roadway ordinances pursuant to section 17-27-1002 of the Utah Code.[21]
¶ 51 Plaintiffs, as owners of real estate within the county in which a violation of the zoning ordinances occurred, have standing to seek injunctive relief under section 17-27-1002. Although a mandatory injunction is within the scope of relief available to remedy the violation of a zoning ordinance, the grant or denial of such a harsh remedy is in the sound discretion of the district court. See Salt Lake County v. Kartchner, 552 P.2d 136, 138 (Utah 1976); Utah County v. Baxter, 635 P.2d 61, 64 (Utah 1981); Utah County v. Young, 615 P.2d 1265, 1267 (Utah 1980). We have stated that "injunctive relief is available only when intervention of a court of equity is essential to protect against `irreparable injury,'" Baxter, 635 P.2d at 64, and where granting it is consistent with the "basic principles of justice and equity." Young, 615 P.2d at 1267.
¶ 52 Plaintiffs rely on the court of appeals's decision in Harper v. Summit County for the proposition that where, as here, a zoning ordinance has been violated, a plaintiff does not have to show irreparable injury. 963 P.2d 768, 778 (Utah Ct.App. 1998), reversed on other grounds by Harper v. Summit County, 2001 UT 10, 26 P.3d 193. We agree that Harper stands for that proposition. However, we disagree with the court of appeals's treatment of this issue in that case and disavow that aspect of its decision.
¶ 53 In Harper, the plaintiffs, a group of private individuals, obtained a mandatory injunction against Summit County requiring the removal of a railroad loading facility. See generally id. In affirming the trial court, the court of appeals relied on our decision in Baxter, 635 P.2d 61, for the proposition that where there has been a zoning violation, a plaintiff need not make a showing of irreparable harm to obtain an injunction. See Harper, 963 P.2d at 778. However, in reviewing Baxter and other pertinent statutory and case law, we conclude that the court of appeals's statement of the law should be modified.
¶ 54 In Baxter, Utah County sought an injunction against a private individual for violation of a zoning ordinance. We reasoned under the facts of that case that because a violation of a zoning ordinance is also a crime, "a showing that the zoning ordinance has been violated is tantamount to a showing of irreparable injury . . . to the public." Baxter, 635 P.2d at 64-65. We therefore held that Utah County was not required to make a specific showing of irreparable injury. See id. The legislature codified that holding in its 1991 amendment to section 17-27-1002, which provides that "[a] county need only establish the violation [of a zoning ordinance] to obtain the injunction." Utah Code Ann. § 17-27-1002(1)(b) (1999) (emphasis added).[22] We limit Baxter's holding that a zoning violation is tantamount to irreparable injury to cases in which a county is seeking the injunction. This follows from the fact that a county is responsible for prosecuting a zoning violation. Harper erroneously extended this holding to cases in which a private individual seeks relief. We thus reaffirm our conclusion in Padjen v. Shipley, wherein we stated:
A private individual must both allege and prove special damages peculiar to himself in order to entitle him to maintain an action to enjoin violation of a zoning ordinance. His damage must be over and above the public injury which may be caused by the violation of the zoning ordinance.
553 P.2d 938, 939 (Utah 1976) (emphasis added).
*658 ¶ 55 The trial court, of course, did not reach and made no finding on summary judgment regarding the extent of plaintiffs' injuries. It is now necessary to remand the case to the trial court to make that determination.[23]
¶ 56 In so doing, the trial court should be guided by our decision wherein we held that "where the encroachment is deliberate and constitutes a willful and intentional taking of another's land, equity may require its restoration, without regard for the relative inconveniences or hardships which may result from its removal." Papanikolas Bros. Enters. v. Sugarhouse Shopping Ctr. Assocs., 535 P.2d 1256, 1259 (Utah 1975). On the record before us, the uncontested facts support only one conclusion: That Hermes acted willfully and deliberately when it constructed its buildings after plaintiffs put both Hermes and the County on notice that the proposed construction would violate county ordinances. By allowing Hermes to proceed, the County stepped into the quagmire which we condemned in Springville Citizens for a Better Community v. City of Springville, where we emphasized that local zoning authorities "are bound by the same terms and standards of applicable zoning ordinances and are not at liberty to make land use decisions in derogation thereof." 979 P.2d 332, 337-38 (Utah 1999).
¶ 57 Inasmuch as plaintiffs have sought injunctive relief and damages in their complaints, the trial court is accorded latitude in fashioning an appropriate remedy. The summary judgments below are reversed, and the cases are remanded to the trial court to award plaintiffs a remedy in accordance with this opinion.
¶ 58 Associate Chief Justice RUSSON, Judge GREENWOOD, Judge DAVIS, and Judge SCHOFIELD concur in Chief Justice HOWE's opinion.
¶ 59 Having disqualified themselves, Justice DURHAM, Justice DURRANT, and Justice WILKINS do not participate herein; Utah Court of Appeals Judges PAMELA T. GREENWOOD and JAMES C. DAVIS and District Judge ANTHONY W. SCHOFIELD sat.
NOTES
[1] Eva C. and Blaine Johnson joined in the action against Hermes.
[2] Midvale City has since annexed all the property involved in this action.
[3] We will refer to the segment of North Union Avenue abutting the Croxford property as the "closed portion" simply for convenience, not to indicate any legal conclusion on the state of the road.
[4] Included in plaintiffs' complaint were allegations that the Ordinance was improperly passed in violation of zoning notice requirements, that they were deprived of adequate access to their property by the Ordinance, and that 1070 East Street violated the roadway standards and CUP because it was not wide enough and was constructed without curb and gutter.
[5] Specifically, Hermes sought an exception from the requirements of minimum right-of-way and pavement widths, a minimum turning radius, and a fifty-foot cul-de-sac.
[6] "We will use the term `claim preclusion' to refer to the branch which has often been referred to as `res judicata' or `merger and bar.' And we use the term `issue preclusion' to refer to the branch often termed `collateral estoppel.'" Murdock v. Springville, 1999 UT 39, ¶ 15, 982 P.2d 65.
[7] Plaintiffs also claimed a violation of county roadway standards and the CUP. However, we do not review whether res judicata bars these claims because defendants do not assert that it does.
[8] In that hearing, plaintiffs' counsel stated: "The reason we are here before you today, your Honor, is not to attack the ordinance. While the original complaint may have those allegations in it, ... we are not attacking that ordinance in the amended complaint." Defendants argue that this statement constituted a waiver of any future claims relating to the Ordinance, and that this waiver resulted in the Culbertson I court's dismissal of these complaints when they were brought again in the amended complaint. However, plaintiffs' counsel also told the court, shortly after making that statement, "I wish, your Honor, I could tell you I'm not going to be back on another amended complaint, but ... I'm telling you we may be back on another amended complaint." The court did not clarify its reasons for dismissing any part of the complaint in its summary judgment order, and we do not accept defendants' argument.
[9] The County refers us to Smolowe v. Delendo Corp., 36 F.Supp. 790 (S.D.N.Y.1940), for the proposition that a "party which once sought to challenge validity of statute may not avoid consequences by recasting its claim as seeking mere construction of statute." Even were we bound by this federal district court case, which we are not, and even should Smolowe stand for the proposition just set forth, which it does not, our holding regarding the Culbertson I court's order makes this issue moot.
[10] Upon ruling in Culbertson I, the district court stated:

[The court is] going to dismiss this matter without prejudicewithout prejudice, that is emphasizedallowing you to exhaust whatever means you wish to, your administrative remedies, and then have leave, if after that time there has been no resolution to your satisfaction, through thethrough Mr. Jones, through the board of planningthe Planning Commission, through the Board of County Commissioners and the Board of Adjustment, then you do have leave, without prejudice, to refile the matter.
[11] Although this case addresses exhaustion in the federal context, it applies by analogy in the state context as well.
[12] The County cites Hi-Country Homeowners Ass'n v. Public Service Commission, 779 P.2d 682 (Utah 1989), for the proposition that plaintiffs' failure to exhaust administrative remedies deprived the court of jurisdiction over their claims. Hi-Country is distinguishable from the case at bar because the plaintiff's claim in that case was subject to the Administrative Procedures Act (APA), which requires a party to exhaust all administrative remedies before seeking judicial review of agency action. Utah Code Ann. § 63-46b-14 (1997). The claims at bar are not subject to the APA. See id. § 63-46b-2(1)(b). Thus, we must look elsewhere to determine whether exhaustion is required.
[13] For example, we have required exhaustion under this section when challenging the denial of a building permit. See, e.g., Hatch v. Utah County Planning Dep't, 685 P.2d 550 (Utah 1984).
[14] The CUP requires that "Highback curb, gutter and sidewalk must be installed along the property lines which abut any public road or street" and that "Conditions of this approval are in addition to the requirement of other Salt Lake Co. Ordinances." However, the final site plan does not depict graphically curb, gutter, sidewalk, or twenty-foot setbacks along North Union Avenue and 1070 East.
[15] This section provides in part:

The front yard area and the side yard area which faces on a street on corner lots shall be landscaped and maintained with live plant material including shrubs, flowers, and trees for a minimum distance of twenty feet behind the property line for all main uses in the C-, C-V, C-2, C-3 and M-1 zones.
Salt Lake County Code of Ordinances § 19.6.155 (1989).
[16] This section provides in part:

The applicant for a building or conditional use permit for all dwellings, commercial or industrial uses, and all other business and public and quasi-public uses shall provide curb, gutter and sidewalk along the entire property line which abuts any public road or street in cases where it does not exist at county standards.
Salt Lake County Code of Ordinances § 19.76.210(A) (1997).
[17] We have defined a thoroughfare as "a place or way through which there is passing or travel." Morris v. Blunt, 49 Utah 243, 251, 161 P. 1127, 1130 (1916).
[18] We referred in Heber City to section 27-12-90, which was subsequently renumbered section 72-5-105. The substance of the statute is the same. 942 P.2d at 313.
[19] Section 72-3-108(3) provides that "[t]he right of way and easement, if any, of a property owner... may not be impaired by vacating or narrowing a county road." Our case law recognizes that when a road is vacated, the abutting property owners retain a private easement in the road for ingress and egress to their properties. See Mason v. State, 656 P.2d 465, 468 (Utah 1982); see also Carrier v. Lindquist, 2001 UT 95, ¶ 12, 37 P.3d 1112. When the County permitted Hermes to place the back wall of one of its buildings on the vacated eight-foot segment of North Union Avenue, it deprived plaintiffs of their easement over that strip.
[20] The portion of Ordinance 1275 pertinent to the grant of easement provides that plaintiffs will have direct access to their properties "from 7240 South through a 25 foot wide public right-of-way which will be conveyed by Hermes Associates Ltd. to Salt Lake County. The twenty-five-foot public right-of-way will revert to Hermes Associates, Inc., in the event it acquires the south properties."
[21] This section provides in relevant part:

[A]ny owner of real estate within the county in which violations of this chapter or ordinances enacted under the authority of this chapter occur ... may, in addition to other remedies provided by law, institute:
(i) injunctions, mandamus, abatement, or any other appropriate actions; or
(ii) proceedings to prevent, enjoin, abate, or remove the unlawful building, use, or act.
Utah Code Ann. § 17-27-1002 (1999).
[22] It is significant that although this section provides that both private individuals and counties may seek injunction to remedy a zoning violation, it singles out the county in its provision requiring only the establishment of the violation.
[23] We recognize that the trial court denied a temporary restraining order in Culberton I because it found plaintiffs showed no irreparable injury. Another determination of injury is necessary based on our holding that a zoning violation occurred. In other words, a zoning violation is not a per se irreparable injury in the case of a private individual; however, it is a significant factor in the equation.